## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHARMING CHARLIE LLC, *et al.*,[1] | ) | Case No. 19- 11534 (CSS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | Re: Docket No. 15 |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

Upon the motion, dated July 11, 2019 (the "DIP Motion") of Charming Charlie LLC (the "Company") and Charming Charlie USA, Inc. ("CC USA" and together with the Company, the "Borrowers") and Charming Charlie Holdings, Inc. (the "Guarantor"), each as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this "Interim Order") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and unless otherwise ordered by this Court, *inter alia*:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Charming Charlie Canada LLC (0693); Charming Charlie Holdings Inc. (6139); Charming Charlie International LLC (5887); Charming Charlie LLC (0263); Charming Charlie Manhattan LLC (7408); Charming Charlie USA, Inc. (3973); and Poseidon Partners CMS, Inc. (3302). The location of the Debtors' headquarters and service address is: 6001 Savoy Drive, Ste. 600, Houston, Texas 77036.

(i)        authorizing the Debtors to obtain senior secured, superpriority postpetition financing (the "DIP Facility," consisting of a senior secured superpriority revolving credit facility in an aggregate principal amount of $13,000,000 pursuant to the terms and conditions of that certain *Debtor-In-Possession Credit Agreement* (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Agreement"), by and among the Debtors, White Oak Commercial Finance, LLC and Second Avenue Capital Partners, LLC, each as a Co-Collateral Agent (collectively, in such capacity, the "DIP Agents") and as a lender under the DIP Facility (collectively, in such capacity, the "DIP Lenders"), substantially in the form of **Exhibit B**, attached to the DIP Motion;

(ii)       authorizing the Debtors to execute and deliver the DIP Agreement and any other agreements, instruments, pledge agreements, guarantees, control agreements  and other Loan Documents (as defined in the DIP Agreement) and documents related thereto (including, without limitation, any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the DIP Agreement, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)      granting to the DIP Agents, for the benefit of themselves and the applicable DIP Lenders and other "Secured Parties" (as defined in the DIP Agreement) on account of the DIP Facility and all obligations owing thereunder and under, or secured by, the DIP Documents (collectively, and including all "Obligations" as described in the DIP Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in the Cases and any Successor Cases (as defined herein), which superpriority administrative expense claims shall be subject to the priorities set forth herein;

2

(iv)        granting to each of the DIP Agents, for their benefit and the benefit of the DIP Lenders and each other applicable Secured Party (as defined in the DIP Agreement) under the applicable DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), which liens shall be subject to the priorities set forth herein;

(v)         authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable, including, letter of credit fees (including issuance and other related charges), commitment fees, success fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, administrative agent's fees, unused facility fees, and the reasonable and documented fees and disbursements of the DIP Agents' attorneys, advisors, accountants, and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(vi)        authorizing the Debtors to use the Prepetition Collateral (as defined herein), including the Cash Collateral of the Prepetition Credit Parties under the Prepetition Documents (each as defined herein), and providing adequate protection to the Prepetition Credit Parties as set forth herein for any diminution in value of their respective interests in the Prepetition Collateral, including Cash Collateral, resulting from the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, and the priming of their respective interests in the Prepetition Collateral, including Cash Collateral, including by the Carve Out (collectively, and solely to the extent of such diminution in value, "Diminution in Value");

(vii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(viii)    scheduling a final hearing (the "Final Hearing") within thirty (30) days of the Petition Date to consider the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Alvaro Bellon, Chief Financial Officer of Charming Charlie Holdings, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), the DIP Documents, and the evidence submitted and argument made by the Debtors at the interim hearing held on July 12, 2019 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved ,or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors and their estate, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[2]

A.      **Petition Date**. On July 11, 2019 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

B.      **Debtors in Possession**. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      **Jurisdiction and Venue**. This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      **Committee Formation**. As of the date hereof, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") has not yet appointed an official committee of unsecured creditors in the Cases pursuant to section 1102 of the Bankruptcy Code (a "<u>Committee</u>").

E.      **Notice**. Notice of the DIP Motion and the Interim Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules,

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

and no other or further notice of the DIP Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

      F.    **Debtors' Stipulations**.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 43 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xv) below are referred to herein, collectively, as the "Debtors' Stipulations"):

      (i)    *Prepetition Revolving Loan Facility*.  Prior to the Petition Date, pursuant to that certain Credit Agreement dated as of February 28, 2019 (as amended, restated, supplemented or otherwise modified from time to time, including the amendments contemplated hereby, the "Prepetition Revolving Loan Credit Agreement" and collectively with the Loan Documents (as defined in the Prepetition Revolving Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Revolving Loan Documents"), by and among (a) the Company and CC USA (collectively, the "Prepetition Revolving Loan Borrower"), (b) the Guarantors (as defined in the Prepetition Revolving Loan Credit Agreement) party thereto, (c) Second Avenue Capital Partners, LLC, as a co-collateral agent and a lender, and White Oak Commercial Finance, LLC, as the administrative agent (together with Second Avenue Capital Partners, LLC, the "Prepetition Revolving Loan Agents"), a co-collateral agent and a lender, (d) the lenders party thereto (the "Prepetition Revolving Loan Lenders," and collectively with the Prepetition Revolving Loan Agents and the other "Secured Parties" under and as defined in the Prepetition Revolving Loan Credit Agreement, the "Prepetition Revolving Loan Secured Parties"), the Prepetition Revolving

Loan Lenders provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, the Prepetition Revolving Loan Borrower pursuant to the Prepetition Revolving Loan Documents (the "Prepetition Revolving Loan Facility").

(ii) *Prepetition Revolving Loan Obligations.* The Prepetition Revolving Loan Facility provided the Prepetition Revolving Loan Borrower with, among other things, up to $35,000,000 aggregate principal amount of Loans (as defined in the Prepetition Revolving Loan Credit Agreement). As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Revolving Loan Facility was approximately $9,500,000 (collectively, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses and disbursements (including attorneys' fees, consultants' fees, accountants' fees, auditor fees, appraisers' fees, and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Revolving Loan Borrower's obligations pursuant to, or secured by, the Prepetition Revolving Loan Documents, including all "Obligations" as defined in the Prepetition Revolving Loan Credit Agreement, and all interest, fees (including amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Revolving Loan Obligations").

(iii) *Prepetition Revolving Loan Liens and Prepetition Collateral.* As more fully set forth in the Prepetition Revolving Loan Documents and the DIP Motion, prior to the Petition Date, the Prepetition Revolving Loan Borrower granted to the Prepetition Revolving

Loan Agents, for the benefit of themselves and the Prepetition Revolving Loan Lenders, a first priority security interest in and continuing lien on (the "Prepetition Revolving Loan Liens") substantially all of its assets and property and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Collateral"), subject only to the Prepetition Revolving Loan Permitted Prior Liens (as defined herein).

(iv)    *Prepetition Term Loan Facility.*    Prior to the Petition Date, pursuant to that certain Credit Agreement dated as of April 24, 2018 (as amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Credit Agreement," and collectively with the Loan Documents (as defined in the Prepetition Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Documents"), among (a) the Company (the "Prepetition Term Loan Borrower"), (b) the Guarantors (as defined in the Prepetition Term Loan Credit Agreement) party thereto, (c) Wilmington Trust, National Association, as administrative agent (the "Prepetition Term Loan Agent"), and (d) the lenders party thereto (the "Prepetition Term Loan Lenders," and collectively with the Prepetition Term Loan Agent, the "Prepetition Term Loan Secured Parties"), the Prepetition Term Loan Lenders provided term loans to the Prepetition Term Loan Borrower (the "Prepetition Term Loan Facility").

(v)    *Prepetition Term Loan Obligations.*    The Prepetition Term Loan Facility provided the Prepetition Term Loan Borrower with term loans in the aggregate principal amount of $55,000,000. As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Loan Facility was $55,000,000 (collectively, together with accrued

and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, consultants' fees, accountants' fees, auditor fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements), indemnification obligations, premium, guarantee obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Term Loan Borrower's obligations pursuant to the Prepetition Term Loan Documents, including all "Obligations" as defined in the Prepetition Term Loan Credit Agreement, and all interest, fees (including amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Term Loan Obligations").

(vi)    *Prepetition Term Loan Liens.*  As more fully set forth in the Prepetition Term Loan Documents and the DIP Motion, prior to the Petition Date, the Prepetition Term Loan Borrower granted to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, a third priority security interest in and continuing lien on (the "Prepetition Term Loan Liens") the Prepetition Collateral, subject and junior to the liens of the Prepetition Revolving Loan Agents, the Prepetition Vendor Program Loan Agent and the Prepetition Term Loan Permitted Prior Liens (as defined herein).

(vii)    *Prepetition Vendor Program Credit Agreement.*  Prior to the Petition Date, pursuant to that certain Vendor Payment Financing Credit and Guarantee Agreement, dated as of April 24, 2018 (as amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Vendor Program Credit Agreement," and collectively with the Loan Documents (as defined in the Prepetition Vendor Program Credit Agreement) and any other agreements and documents executed or delivered in connection

therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Vendor Program Loan Documents," and together with the Prepetition Revolving Loan Documents and the Prepetition Term Loan Documents, the "Prepetition Documents"), among (a) the Company (the "Prepetition Vendor Program Borrower"), (b) the Vendor Program Guarantors (as defined in the Prepetition Vendor Program Credit Agreement), (c) Wilmington Trust, National Association (the "Prepetition Vendor Program Loan Agent," and together with the Prepetition Revolving Loan Agents and the Prepetition Term Loan Agent, the "Prepetition Agents"), and (c) the lenders party thereto (the "Prepetition Vendor Program Lenders," and collectively with the Prepetition Vendor Program Loan Agent, the "Prepetition Vendor Program Loan Secured Parties," and together with the Prepetition Revolving Loan Secured Parties and the Prepetition Term Loan Secured Parties, the "Prepetition Secured Parties"), the Prepetition Vendor Program Lenders provided certain loans to the Prepetition Vendor Program Borrower (the "Prepetition Vendor Program Facility," and together with the Prepetition Revolving Loan Facility and the Prepetition Term Loan Facility, the "Prepetition Secured Facilities").

   (viii) *Prepetition Vendor Program Loan Obligations.* The Prepetition Vendor Program Facility provided the Prepetition Vendor Program Borrower with loans in the aggregate principal amount of $10,000,000. As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Vendor Program Facility was $10,000,000 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, consultants' fees, accountants' fees, auditor fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements), indemnification obligations, premium, guarantee obligations, and other charges, amounts, and costs of whatever nature

owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Vendor Program Borrower's obligations pursuant to the Prepetition Vendor Program Loan Documents, including all "Obligations" as defined in the Prepetition Vendor Program Credit Agreement, and all interest, fees (including amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Vendor Program Loan Obligations," and together with the Prepetition Revolving Loan Obligations and the Prepetition Term Loan Obligations, the "Prepetition Secured Obligations").

(ix)    *Prepetition Vendor Program Liens.*  As more fully set forth in the Prepetition Vendor Program Loan Documents and the DIP Motion, prior to the Petition Date, the Prepetition Vendor Program Borrower granted to the Prepetition Vendor Program Loan Agent, for the benefit of itself and the Prepetition Vendor Program Lenders, a second priority security interest in and continuing lien on (the "Prepetition Vendor Program Liens," and together with the Prepetition Revolving Loan Liens and the Prepetition Term Loan Liens, the "Prepetition Liens") the Prepetition Collateral, subject and junior to the liens of the Prepetition Revolving Loan Agents and the Prepetition Vendor Program Permitted Prior Liens (as defined herein).

(x)    *Priority of Prepetition Liens; Intercreditor Agreements.*    The Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, and the Prepetition Vendor Program Loan Agent are parties to that certain Intercreditor Agreement dated as of February 28, 2019 (as amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "Intercreditor Agreement"), which governs the respective rights, interests, obligations, priorities, and positions of the Prepetition Secured Parties with respect to the assets and properties of the Debtors.  The Prepetition Term Loan Agent and the

Prepetition Vendor Program Loan Agent are parties to that certain Intercreditor Agreement dated as of April 24, 2018 (as amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "Term Vendor Intercreditor Agreement"), which governs the respective rights, interests, obligations, priorities, and positions of the Prepetition Term Loan Lenders and Prepetition Vendor Program Lenders with respect to the assets and properties of the Debtors. The Debtors, as borrowers and guarantors under the Prepetition Documents, acknowledged and agreed to the Intercreditor Agreement and the Term Vendor Intercreditor Agreement.

(xi).    *Validity, Perfection, and Priority of Prepetition Revolving Loan Liens and Prepetition Revolving Loan Obligations.* The Debtors acknowledge and represent that as of the Petition Date (a) the Prepetition Revolving Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Revolving Loan Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Revolving Loan Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Revolving Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Revolving Loan Liens as of the Petition Date, the "Prepetition Revolving Loan Permitted Prior Liens"); (c) the Prepetition Revolving Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Revolving Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Revolving Loan Liens or Prepetition Revolving Loan Obligations exist, and no portion of the Prepetition

Revolving Loan Liens or Prepetition Revolving Loan Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Revolving Loan Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Revolving Loan Facility; (f) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, including without limitation, under any theory of "equitable subordination", "lender liability", and/or "deepening insolvency", against any of the Prepetition Revolving Loan Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to administration of the business relationship among the Debtors and the Prepetition Revolving Loan Secured Parties; (g) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Revolving Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Revolving Loan Obligations; and (h) the Prepetition Revolving Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(xii)    *Validity, Perfection, and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations.*  The Debtors further acknowledge and represent that, as

of the Petition Date, the Prepetition Term Loan Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject and junior to (1) the Prepetition Revolving Loan Liens, (2) the Prepetition Vendor Program Liens, and (3) certain liens otherwise permitted by the Prepetition Term Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Term Loan Liens as of the Petition Date, the "Prepetition Term Loan Permitted Prior Liens").    The Debtors further acknowledge and agree that as of the Petition Date (a) the Prepetition Term Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Term Loan Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Term Loan Documents; (c) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Loan Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Term Loan Facility; (e) the Debtors and their estates have no claims, objections,

challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, including without limitation, under any theory of "equitable subordination", "lender liability", and/or "deepening insolvency", against any of the Prepetition Term Loan Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to administration of the business relationship among the Debtors and the Prepetition Term Loan Secured Parties; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Loan Obligations; and (g) the Prepetition Term Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(xiii) *Validity, Perfection, and Priority of Prepetition Vendor Program Liens and Prepetition Vendor Program Loan Obligations.* The Debtors further acknowledge and represent that, as of the Petition Date, the Prepetition Vendor Program Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject and junior to (1) the Prepetition Revolving Loan Liens, (2) [reserved], and (3) certain liens otherwise permitted by the Prepetition Vendor Program Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Vendor Program Liens as of the Petition Date, the "Prepetition Vendor Program Permitted Prior Liens" and, together with the Prepetition Revolving Loan Permitted Prior Liens and the Prepetition

15

Term Loan Permitted Prior Liens, the "Permitted Prior Liens").[3]    The Debtors further acknowledge and agree that as of the Petition Date (a) the Prepetition Vendor Program Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Vendor Program Loan Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Vendor Program Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Vendor Program Loan Documents; (c) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Vendor Program Liens or Prepetition Vendor Program Loan Obligations exist, and no portion of the Prepetition Vendor Program Liens or Prepetition Vendor Program Loan Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Vendor Program Loan Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Vendor Program Facility; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance

---

[3]    For the avoidance of doubt, as used in this Interim Order, no reference to the Prepetition Revolving Loan Permitted Prior Liens, the Prepetition Term Loan Permitted Prior Liens, the Prepetition Vendor Program Permitted Prior Liens, or the Permitted Prior Liens shall refer to or include the Prepetition Revolving Loan Liens, the Prepetition Term Loan Liens, or the Prepetition Vendor Program Liens.

claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, including without limitation, under any theory of "equitable subordination", "lender liability", and/or "deepening insolvency", against any of the Prepetition Vendor Program Loan Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to administration of the business relationship among the Debtors and the Prepetition Vendor Program Loan Secured Parties; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Vendor Program Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Vendor Program Loan Obligations; and (g) the Prepetition Vendor Program Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(xiv)    *No Control.*    None of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are managed or conducted, or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Documents, the Prepetition Revolving Loan Secured Facility, the Prepetition Revolving Loan Documents, the Prepetition Term Loan Secured Facility, the Prepetition Term Loan Documents, the Prepetition Vendor Program Loan Documents and/or Prepetition Vendor Program Facility.

(xv)    *Default by the Debtors.*    The Debtors acknowledge and stipulate that they have been and are in default of their obligations under the Prepetition Revolving Loan

Documents and that, as of the Petition Date, interest was accruing on the Prepetition Revolving Loan Secured Obligations at the default rate.

G.    **Continuation of Liens; Permitted Prior Liens**.  The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens, and the Prepetition Collateral and DIP Collateral are and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facility, the DIP Documents and the Prepetition Secured Documents.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agents, the Prepetition Secured Parties, or a Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests.  Any right or alleged right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the Prepetition Liens and the DIP Liens.

H.    **Cash Collateral**.  All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

I.    **Findings Regarding Corporate Authority.**    The Debtors have all requisite corporate power and authority to execute and deliver the DIP Documents to which they are a party and to perform their obligations thereunder.

J.    **Intercreditor Agreement**.  Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreement, the Term Vendor Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition

Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under this Interim Order or otherwise and the modification of the automatic stay), and (iii) shall not be deemed to be amended, altered, or modified by the terms of this Interim Order or the DIP Documents, unless expressly set forth herein or therein.

K.    **Findings Regarding Postpetition Financing**

(i)    *Request for Postpetition Financing.*  The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein to administer their Cases and fund their operations.  From entry of this Interim Order until the earlier to occur of entry of a Final Order[4] or the Termination Date (as defined herein) (the "Interim Period"), the Debtors shall be entitled to borrow up to $13,000,000 on a revolving basis under the DIP Facility (the "DIP Financing"). At the Final Hearing, the Debtors will seek final approval of the DIP Financing (including the DIP Roll-Up Loans, as defined below) and use of Cash Collateral.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)    *Priming of the Prepetition Liens.*  The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors.  The Prepetition Secured Parties are each entitled to receive adequate protection as

---

[4]    "Final Order" as used herein means a final, non-appealable order, the effectiveness of which is not stayed, and the form and substance of which are acceptable in all respects to each of the DIP Agents.

set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.*    The Debtors have an immediate and critical need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility in order to, among other things, enable the orderly continuation of their operations and to administer and preserve the value of their estates.    The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest.    The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business in the Interim Period without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.*    Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.    The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.    The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their

estates that is subject to a lien.  As described in the First Day Declaration, post-petition financing on better terms is not available without granting the DIP Agents, for the benefit of themselves and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof, including being subject to the Carve Out; (2) superpriority claims and liens, subject to and subordinate to the Carve Out; and (3) the other protections set forth in this Interim Order.

(v)     *Use of proceeds of the DIP Facility.*  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the DIP Agents and the DIP Lenders require, and the Debtors have agreed, that proceeds of the DIP Facility and Cash Collateral shall be used, in each case in a manner consistent with the terms and conditions of this Interim Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documents and subject to such variances as permitted in the DIP Agreement, and as set forth in paragraphs 20 and 21 hereof, the "Budget"),[5] solely for: (a) working capital and letters of credit, (b) other general corporate purposes of the Debtors; (c) permitted payment of costs of administration of the Cases, including professional fees; (d) payment of such other prepetition obligations as permitted under the DIP Documents and as consented to by the DIP Agents, each in its sole discretion, and as approved by the Court; (e) payment of interest, fees, expenses, and other amounts (including legal and other professionals' fees and expenses of the DIP Agents) owed under the DIP Documents; (f) payment of certain adequate protection amounts to the Prepetition Secured Parties, as set forth in paragraphs 16-17 hereof; (g) upon entry of the Final Order, the conversion of the Prepetition Revolving Loan Obligations into DIP

---

[5]     A copy of the initial Budget is attached hereto as **Schedule 1**.

Obligations, subject to the rights preserved in paragraph 43 of this Interim Order; (h) payment of obligations arising from or related to the Carve Out, and making disbursements therefrom; and (i) such other uses permitted by the DIP Documents and set forth in the Budget.

(vi)     *Application of Proceeds of Collateral.*  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties have agreed that as of and commencing on the date of entry of the Interim Order, the Debtors shall apply the proceeds of DIP Collateral in accordance with this Interim Order and as provided in the DIP Documents.

(vii)    *Roll-up of Prepetition Revolving Loan Obligations into DIP Obligations.*  Upon entry of the Final Order, all of the Prepetition Revolving Loan Obligations shall be converted into DIP Obligations (the "DIP Roll-Up Loans").  The Prepetition Revolving Loan Secured Parties would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Agents and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtors thereunder without the inclusion of the DIP Roll-Up Loans in the DIP Obligations.  Because the DIP Roll-Up Loans are subject to the reservation of rights in paragraph 43 below, they will not prejudice the right of any party in interest.

L.     **Adequate Protection**.  The Prepetition Revolving Loan Agents, for the benefit of themselves and the Prepetition Revolving Loan Secured Parties, the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Secured Parties, and the Prepetition Vendor Program Loan Agent, for the benefit of itself and the Prepetition Vendor Program Lenders, are each entitled to receive adequate protection as set forth herein to the extent

of any Diminution in Value of their respective interests in the Prepetition Collateral.  Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection: (i) the Prepetition Revolving Loan Secured Parties will receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 14 herein, and (b) current payment of interest and documented fees and out-of-pocket expenses (including legal and other professionals' reasonable and documented fees and expenses of the Prepetition Revolving Loan Agents whether arising before or after the Petition Date), as more fully set forth in paragraph 16 herein; and (ii) the Prepetition Term Loan Secured Parties and the Prepetition Vendor Program Loan Secured Parties will receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 14 herein, and (b) the accrual (but not current payment) of expenses (including legal and other professionals' reasonable and documented fees and out-of-pocket expenses of the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent, respectively, whether arising before or after the Petition Date), as more fully set forth in paragraph 17 herein.

       M.    **Sections 506(c) and 552(b).**  In light of: (i) the DIP Agents' and DIP Lenders' agreement that their liens and superpriority claims shall be subject and subordinate to the Carve Out; (ii) the Prepetition Secured Parties' agreement that their liens shall be subject and subordinate to the Carve Out and subordinate to the DIP Liens; and (iii) the payment of expenses as set forth in the Budget, in accordance with and subject to the terms and conditions of this Interim Order and the DIP Documents, (a) subject to entry of a Final Order, the Prepetition Secured Parties are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) subject to entry of a Final Order, the DIP Agents, the

DIP Lenders, and Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

      N.      **Good Faith of the DIP Agents, DIP Lenders and Prepetition Secured Parties**.

      (i)      *Willingness to Provide Financing and Consent to Use of Cash Collateral.* The DIP Lenders have indicated a willingness to provide financing to the Debtors, and the Prepetition Secured Parties have consented to the use of Cash Collateral, subject to: (a) entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Facility and the use of Cash Collateral are essential to the Debtors' estates, that the DIP Agents and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, that the DIP Agents, DIP Lenders, and Prepetition Secured Parties have acted in good faith, and that the DIP Agents', DIP Lenders', and Prepetition Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided by sections 363(m) and 364(e) of the Bankruptcy Code.

      (ii)      *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The terms and conditions

of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agents, the DIP Lenders, and the Prepetition Revolving Loan Secured Parties, with the assistance and counsel of their respective advisors, and the DIP Agents, DIP Lenders, and Prepetition Revolving Secured Parties have acted in good faith. The use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agents, the DIP Lenders, and the Prepetition Revolving Loan Secured Parties within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code.

O. **Immediate Entry**. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

P. **Interim Hearing**. Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Agents and the Prepetition Revolving Loan Agents; (iv) counsel to the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent; and (v) all other parties entitled to notice under the Local Rules. No other notice is required in connection with the relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion, the First Day Declaration, and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.    <u>DIP Financing Approved</u>. The DIP Motion is granted as set forth herein on an interim basis, the DIP Financing is authorized and approved on an interim basis as set forth herein, and the use of Cash Collateral on an interim basis is authorized, in each case subject to the terms and conditions set forth in the DIP Documents and this Interim Order. All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

**DIP Facility Authorization**

2.    <u>Authorization of the DIP Facility</u>. The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Interim Order and the DIP Documents. The Debtors are hereby authorized to pay, in accordance with this Interim Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become earned, due, and payable and without need to obtain further Court approval, including success or closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, amendment fees, commitment fees, backstop fees, servicing fees, audit fees, appraisal fees, administrative agent's fees, the reasonable and documented fees and disbursements of the DIP Agents' attorneys, advisors, accountants, and consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be

necessary or appropriate, all to the extent provided in this Interim Order or the DIP Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with their terms.

3. _Authorization to Borrow_. To prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the Termination Date (as defined herein), and subject to the terms, conditions, limitations on availability and reserves (as applicable) set forth in the DIP Documents and this Interim Order, the Debtors are hereby authorized to request the DIP Financing.

4. _DIP Obligations_. The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including any trustee appointed in any of the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Upon entry of this Interim Order, the DIP Obligations will include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtors to the DIP Agents or any of the DIP Lenders, in each case, under, or secured by, the DIP Documents or this Interim Order, including all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Documents. Without limiting the

foregoing, the DIP Obligations shall also include cash management exposure to the extent described in, or secured by, the Prepetition Revolving Loan Documents and the DIP Documents, including all Obligations (as defined in the DIP Agreement).  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Date (as defined herein), except as provided in paragraph 31 herein.  No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligations or DIP Liens (as defined herein), and including in connection with any adequate protection provided to the Prepetition Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

        5.     <u>DIP Liens</u>.  Subject and subordinate to the Carve Out as set forth in this Interim Order, in order to secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agents, for the benefit of themselves and the DIP Lenders, are hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "<u>DIP Liens</u>") all personal property, whether now existing or hereafter arising and wherever located, tangible and

intangible, of the Debtors (the "DIP Collateral"), including without limitation: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all proceeds of leased real property; (c) actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral and all proceeds of any such action; (d) subject to entry of a Final Order, the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code (other than actions brought pursuant to section 549 of the Bankruptcy Code) or applicable state law equivalents; (e) subject to entry of a Final Order, the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code and the proceeds thereof; (f) all Prepetition Collateral; and (g) all DIP Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date. Notwithstanding the foregoing, DIP Collateral shall not include the Debtors' real property leases (but shall include all proceeds of such leases). The Prepetition Revolving Loan Liens shall be deemed continuing liens for the benefit of the Prepetition Revolving Loan Secured Parties, the

DIP Agents, and the DIP Lenders to secure the DIP Obligations, and any liens, claims, or interests subordinate to the Prepetition Revolving Loan Liens as of the Petition Date shall likewise be deemed subordinate to the DIP Liens.

6.    DIP Lien Priority.  The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens shall be subject and subordinate to the Carve Out as set forth in this Interim Order and shall otherwise be junior only to Prepetition Revolving Loan Permitted Prior Liens.  Other than as set forth herein (including the Carve Out) or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Cases or Successor Cases.  The DIP Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Lien. Notwithstanding any provisions of this Interim Order, or any final orders pertaining to the sale of the Debtors' assets, or any agreements validated by any such orders, any senior liens currently held by the Local Texas Tax Authorities[6] shall neither be primed by, nor subordinated to, any liens granted thereby.

7.    DIP Superpriority Claims.  Upon entry of this Interim Order, the DIP Agents, on behalf of themselves and the DIP Lenders, are hereby granted, pursuant to section

---

[6]    As used herein, "Local Texas Tax Authorities" shall mean Arlington ISD, City of Highland Village, City of Garland, Garland ISD, Texas Lubbock Central Appraisal District, and other local Texas tax authorities as agreed to with the DIP Lenders.

364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases and any Successor Cases (the "DIP Superpriority Claim") for all DIP Obligations: (a) except as set forth herein, including with respect to the Carve Out, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.  The DIP Superpriority Claim shall be senior in all respects to each of the Adequate Protection Superpriority Claims (as defined herein).

8.    No Obligation to Extend Credit.  The DIP Agents and DIP Lenders shall have no obligation to make any loan or advance, or to issue, amend, renew, or extend any letters of credit under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal, or extension of such letter of credit under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Agents and in accordance with the terms of the DIP Agreement.

9.    Use of Proceeds of DIP Facility.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility, in accordance with the Budget (subject to such variances as permitted in the DIP Agreement), only for the purposes specifically set forth in Budget, and in compliance with the terms and conditions in this Interim Order and the DIP Documents.

10.    <u>Roll-Up of Loans</u>.  Subject to entry of the Final Order and the consent of the Prepetition Revolving Loan Secured Parties, the DIP Roll-Up Loans shall be included in the DIP Obligations, and all Prepetition Revolving Loan Obligations shall be converted and "rolled-up" into DIP Roll-Up Loans, and such Prepetition Revolving Loan Obligations shall constitute DIP Obligations.  The authorization of the DIP Roll-Up Loans shall be subject to the reservation of rights set forth in paragraph 43 of this Interim Order.

## Authorization to Use Cash Collateral

11.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, the DIP Facility, and the DIP Documents and in accordance with the Budget (subject to such variances as permitted in the DIP Agreement), the Debtors are authorized to use Cash Collateral until the Termination Date; *provided, however*, that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral solely to meet payroll obligations (other than severance) and pay expenses critical to keep the Debtors' businesses operating in accordance with the Budget, and as otherwise agreed by the DIP Agents, each in their sole discretion.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order (including the Carve Out), the DIP Facility, the DIP Documents, and in accordance with the Budget (subject to such variances as permitted in the DIP Agreement).

12.    <u>Adequate Protection Liens</u>.

(a)    *Prepetition Revolving Loan Adequate Protection Liens*.  Subject to and subordinate to the Carve Out as set forth in this Interim Order, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the

Prepetition Revolving Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Revolving Loan Agents, for the benefit of themselves and the Prepetition Revolving Loan Secured Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on all DIP Collateral (the "Prepetition Revolving Loan Adequate Protection Liens").

(b) *Prepetition Term Loan Adequate Protection Liens.* Subject to and subordinate to the Carve Out as set forth in this Interim Order and to the Prepetition Revolving Loan Adequate Protection Liens, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Secured Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on all DIP Collateral (the "Prepetition Term Loan Adequate Protection Liens").

(c) *Prepetition Vendor Program Loan Adequate Protection Liens.* Subject to and subordinate to the Carve Out as set forth in this Interim Order and to the Prepetition Revolving Loan Adequate Protection Liens, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Vendor Program Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Vendor Program Loan Agent, for the benefit of itself and the Prepetition Vendor Program Loan Secured Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in

and liens on all DIP Collateral (the "Prepetition Vendor Program Loan Adequate Protection Liens," and together with the Prepetition Revolving Loan Adequate Protection Liens and the Prepetition Term Loan Adequate Protection Liens, the "Adequate Protection Liens")

13.    Priority of Adequate Protection Liens.

(a)    The Prepetition Revolving Loan Adequate Protection Liens shall be subject and subordinate to the Carve Out as set forth in this Interim Order and shall otherwise be junior only to: (i) Permitted Prior Liens; (ii) the DIP Liens; and (iii) the Prepetition Revolving Loan Liens.  The Prepetition Revolving Loan Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(b)    The Prepetition Term Loan Adequate Protection Liens shall be subject and subordinate to the Carve Out as set forth in this Interim Order and shall otherwise be junior only to: (i) Permitted Prior Liens; (ii) the DIP Liens; (iii) the Prepetition Revolving Loan Liens; (iv) the Prepetition Revolving Loan Adequate Protection Liens; (v) the Prepetition Vendor Program Liens and (vi) the Prepetition Term Loan Liens.  The Prepetition Term Loan Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(c)    The Prepetition Vendor Program Loan Adequate Protection Liens shall be subject and subordinate to the Carve Out as set forth in this Interim Order and shall otherwise be junior only to: (i) Permitted Prior Liens; (ii) the DIP Liens; (iii) the Prepetition Revolving Loan Liens; and (iv) the Prepetition Revolving Loan Adequate Protection Liens.  The Prepetition Vendor Program Loan Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(d)      Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, or upon the dismissal of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

14.      <u>Adequate Protection Superpriority Claims</u>.

(a)      *Prepetition Revolving Loan Superpriority Claim.*   Subject and subordinate to the Carve Out as set forth in this Interim Order and the DIP Superpriority Claim, as further adequate protection of the interests of the Prepetition Revolving Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Revolving Loan Agents, on behalf of themselves and the Prepetition Revolving Loan Secured Parties, are hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Cases and any Successor Cases (the "<u>Prepetition Revolving Loan Superpriority Claim</u>").

(b)      *Prepetition Term Loan Superpriority Claim.*   Subject and subordinate to the Carve Out as set forth in this Interim Order, the DIP Superpriority Claim and the Prepetition Revolving Loan Superpriority Claim, as further adequate protection of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Secured Parties, is hereby granted as

and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Cases and any Successor Cases (the "Prepetition Term Loan Superpriority Claim").

(c)    *Prepetition Vendor Program Loan Superpriority Claim.*  Subject and subordinate to the Carve Out as set forth in this Interim Order, the DIP Superpriority Claim and the Prepetition Revolving Loan Superpriority Claim, as further adequate protection of the interests of the Prepetition Vendor Program Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Vendor Program Loan Agent, on behalf of itself and the Prepetition Vendor Program Loan Secured Parties, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Cases and any Successor Cases (the "Prepetition Vendor Program Loan Superpriority Claim," and together with the Prepetition Revolving Loan Superpriority Claim and the Prepetition Term Loan Superpriority Claim, the "Adequate Protection Superpriority Claims").

15.    Priority of the Adequate Protection Superpriority Claims.  Except as set forth herein or in the DIP Agreement, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code; *provided, however*, that (a) the Prepetition Revolving Loan Superpriority Claim shall be junior to the Carve Out and the DIP Superpriority Claim, (b) the Prepetition Term Loan Superpriority Claim shall be junior to the Carve Out, the

DIP Superpriority Claim, the Prepetition Revolving Loan Superpriority Claim, and the Prepetition Vendor Program Loan Superpriority Claim, and (c) the Prepetition Vendor Program Loan Superpriority Claim shall be junior to the Carve Out, the DIP Superpriority Claim, and the Prepetition Revolving Loan Superpriority Claim, and shall be senior to the Prepetition Term Loan Superpriority Claim.

16.    <u>Adequate Protection Payments and Protections for Prepetition Revolving Loan Secured Parties</u>.    As further adequate protection (the "<u>Prepetition Revolving Loan Adequate Protection Payments</u>"), the Debtors are authorized to provide adequate protection to the Prepetition Revolving Loan Secured Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of (i) interest (including at the default rate) and principal due under the Prepetition Revolving Loan Documents, subject to the rights preserved in paragraph 43 below, (ii) the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Revolving Loan Agents, including the reasonable and documented out-of-pocket expenses and disbursements incurred by (I) Choate, Hall & Stewart LLP, as counsel to the Prepetition Revolving Loan Agents and (II) Richards, Layton & Finger, P.A., as co-counsel to the Prepetition Revolving Loan Agents, arising prior, on, or subsequent to the Petition Date.

17.    <u>Adequate Protection Payments and Protections for Prepetition Term Loan Secured Parties and the Prepetition Vendor Program Loan Secured Parties</u>.    Subject to the Carve Out as set forth in this Interim Order, as further adequate protection (the "<u>Prepetition Subordinated Creditor Adequate Protection Payments</u>," and together with the Prepetition

Revolving Loan Adequate Protection Payments, the "Adequate Protection Payments"), the Debtors are authorized to provide adequate protection to the Prepetition Term Loan Secured Parties and the Prepetition Vendor Program Loan Secured Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent, including the reasonable and documented fees, out-of-pocket expenses, and disbursements incurred by (I) Covington & Burling, as counsel to the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent, (II) [reserved], as co-counsel to the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent arising prior, on, or subsequent to the Petition Date (III) Winston & Strawn LLP, as counsel to the lenders pursuant to the Prepetition Term Loan Credit Agreement and Prepetition Vendor Program Credit Agreement and (IV) Young Conaway Stargatt & Taylor, LLP, as co-counsel to the lenders pursuant to the Prepetition Term Loan Credit Agreement and Prepetition Vendor Program Credit Agreement; *provided, however,* that the Debtors shall not make any Prepetition Subordinated Creditor Adequate Protection Payments prior to the indefeasible payment in full, in cash of all DIP Obligations and all Prepetition Revolving Loan Obligations and the termination of all commitments to lend or otherwise provide any other financing under the DIP Facility or the Prepetition Revolving Loan Facility.

18.     Adequate Protection Reservation.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate

protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases. The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected. Further, this Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties, subject to the Intercreditor Agreement, to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

### Provisions Common to DIP Financing and Use of Cash Collateral

19.    <u>Amendment of the DIP Documents</u>. The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) non-material (which shall include, but is not limited to, any extension of the Termination Date, addition of notice parties, and amendments that increase notice periods) and (b) in accordance with (x) the DIP Documents and (y) the Intercreditor Agreement; provided that the Debtors shall provide reasonably prompt notice (which may be provided through electronic mail or facsimile) to counsel to a Committee (if appointed) and the U.S. Trustee (collectively, the "<u>Notice Parties</u>") of any such non-material amendment, modification, or supplement. In the case of a material amendment, modification, or supplement to the DIP Documents that is adverse to the Debtors' estate or in contravention with the Intercreditor Agreement, the Debtors shall provide notice (which may be provided through electronic mail or facsimile) to the Notice Parties, counsel to the lenders under the Prepetition Vendor Program Credit Agreement and Prepetition Term Loan Credit Agreement, parties who have requested notice, and parties that are affected by such material amendment, modification, or supplement (collectively, the "<u>Material Change Notice Parties</u>"), each of whom shall have five

(5) business days from the date of such notice to object in writing to such amendment, modification or supplement. If none of the Material Change Notice Parties indicate that they have an objection to the amendment, modification, or supplement, the Debtors may proceed to execute the amendment, modification, or supplement, which shall become effective immediately upon execution. If a Material Change Notice Party timely objects to such amendment, modification, or supplement, and such objection is not consensually resolved by the Debtors, the DIP Agents, and the objecting Material Change Notice Party, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement; *provided* that such amendment, modification, or supplement shall be without prejudice to the right of any party in interest to be heard. Any material modification, amendment, or supplement that becomes effective in accordance with this paragraph 19 shall be filed with the Court by the Debtors no later than three (3) business days after becoming effective (and may be filed with the Court by the DIP Agents if the Debtors fail to do so).

20.    <u>Budget Maintenance</u>. The use of borrowings and letters of credit under the DIP Facility and the use of Cash Collateral shall be limited in accordance with the Budget, subject to the variances set forth in the DIP Agreement. Until the indefeasible payment in full, in cash of the DIP Obligations and the Prepetition Revolving Loan Obligations, the Budget, and any modification to, or amendment or update thereof, shall be delivered to, approved by, and in form and substance satisfactory to, the DIP Agents in their sole discretion. The Budget shall be updated, modified, or supplemented by the Debtors from time to time in accordance with the DIP Agreement (provided that any update, modification or supplement shall be approved in writing by, and shall be in form and substance satisfactory to, the DIP Agents in their sole discretion), and no such updated, modified, or supplemented budget shall be effective until so approved and

once approved shall be deemed the "Budget"; *provided, however*, that if an updated, modified, or supplemented budget is delivered to the DIP Agents for approval, but the DIP Agents do not respond within five (5) business days, such budget shall be deemed the "Budget." Each Budget delivered to the DIP Agents shall be accompanied by such supporting documentation as reasonably requested by the DIP Agents and shall be prepared in good faith based upon assumptions the Debtors believe to be reasonable. A copy of any Budget (or updated Budget) shall be delivered to counsel for a Committee (if appointed) and the U.S. Trustee after (or if) it has been approved by the DIP Agents.

21.    <u>Budget Compliance</u>. The Debtors shall at all times comply with the Budget, subject to the variances set forth in the DIP Agreement. The Debtors shall provide all reports and other information as required in the DIP Agreement (subject to the grace periods provided therein). The Debtors' failure to comply with the Budget (subject to the variances set forth in the DIP Agreement) or to provide the reports and other information required in the DIP Agreement shall constitute an Event of Default (as defined herein), to the extent set forth in, and following the expiration of any applicable grace period set forth in, the DIP Agreement.

22.    <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agents, the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, and the Prepetition Vendor Program Loan Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the

DIP Agents, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facility, and this Interim Order, as applicable; and (d) authorize the Debtors to pay, and the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order.

23.    **Perfection of DIP Liens and Adequate Protection Liens**.  This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, intellectual property security agreement, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Adequate Protection Liens, or to entitle the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agents, the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, and the Prepetition Vendor Program Loan Agent is authorized to file, as each in its sole discretion deems necessary or advisable, such financing statements, security agreements, intellectual property security agreements, mortgages, leasehold mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, security agreements, mortgages, leasehold mortgages, intellectual property security agreements, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be

necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens. The Debtors are authorized to execute and deliver promptly upon demand to the DIP Agents, the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, and the Prepetition Vendor Program Loan Agent all such financing statements, security agreements, mortgages, leasehold mortgages, intellectual property security agreements, notices, and other documents as the DIP Agents, the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, and the Prepetition Vendor Program Loan Agent may reasonably request. Each of the DIP Agents, the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, and the Prepetition Vendor Program Loan Agent, in its discretion, may file a copy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument. To the extent that the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, or the Prepetition Vendor Program Loan Agent is the secured party under any security agreement, intellectual property security agreements, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, consignment agreement, financing statement, account control agreements, or any other Prepetition Documents or is listed as loss payee, lender's loss payee, or additional insured under any of the Debtors' insurance policies, the DIP Agents shall also be deemed to be secured parties under such documents or to be the loss payee, lender's loss payee, or additional insured, as applicable. The Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, and the Prepetition Vendor Program Agent shall serve as agents for the DIP Agents for purposes of perfecting the DIP Agents' liens on all DIP Collateral that, without giving effect to the

Bankruptcy Code and this Interim Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

24.    <u>Application of Proceeds of Collateral</u>.  As a condition to the entry of the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply all net proceeds of DIP Collateral, Receipts and Collections (as defined in the DIP Agreement), and other payments received by the DIP Agents, including whether sold in the ordinary course, liquidated pursuant to any agreement with an Approved Liquidator, or otherwise, as provided in the DIP Agreement; provided that if the DIP Obligations and the Prepetition Revolving Loan Obligations have been indefeasibly paid in full in cash and the DIP Lenders' commitments to lend have terminated, all net proceeds of DIP Collateral, Receipts and Collections shall be applied as provided in the Prepetition Vendor Program Credit Agreement and Prepetition Term Loan Credit Agreement, as applicable, unless otherwise ordered by the Bankruptcy Court.

25.    <u>Protections of Rights of DIP Agents, DIP Lenders and Prepetition Secured Parties</u>.  Unless the DIP Agents and the Prepetition Revolving Loan Agents shall have provided their prior written consent, or all DIP Obligations and all Prepetition Secured Obligations have been indefeasibly paid in full in cash, and all letters of credit under the Prepetition Revolving Loan Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof, bank product obligations shall have been cash collateralized in a manner and amount acceptable to the Prepetition Revolving Loan Agents and the lending commitments under the DIP Facility have terminated:

(a)     Without the prior written consent of the DIP Agents, there shall not be entered in the Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims except as expressly set forth in this Interim Order or the DIP Documents; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Interim Order; (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness or consignment arrangement) to any creditor of any Debtor or any creditor's taking any setoff or recoupment against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification of any of the DIP Agents' or DIP Lenders' rights under this Interim Order or the DIP Documents.

(b)     The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records, and accounts to the extent and as required by the DIP Documents (and subject to the applicable grace periods set forth therein); (ii) reasonably cooperate with, consult with, and provide to the DIP Agents all such information and documents that the Debtors are obligated (including upon reasonable request by the DIP Agents) to provide under the DIP Documents or the provisions of this Interim Order; (iii) upon reasonable advance notice and during normal business hours if requested by the Debtors, permit

the DIP Agents, the DIP Lenders and their advisors to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition Documents; (iv) permit the DIP Agents, the DIP Lenders, and their advisors to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets in accordance with the DIP Documents; and (v) upon reasonable advance notice and during normal business hours if requested by the Debtors, permit the DIP Agents to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral in accordance with, and to the extent set forth in, the DIP Documents.

26.    <u>Credit Bidding</u>.  Subject to entry of the Final Order, in connection with any sale process authorized by the Court, the DIP Agents, the DIP Lenders, and the Prepetition Revolving Loan Secured Parties and (subject to the Intercreditor Agreement and Term Vendor Intercreditor Agreement), the Prepetition Term Loan Secured Parties and the Prepetition Vendor Program Secured Parties may credit bid some or all of their claims for their respective priority collateral (each a "<u>Credit Bid</u>") pursuant to section 363(k) and/or section 1129 of the Bankruptcy Code.  Each of the DIP Agents, the DIP Lenders, the Prepetition Revolving Loan Secured Parties, the Prepetition Term Loan Secured Parties and the Prepetition Vendor Program Loan Secured Parties shall be considered a "Qualified Bidder" with respect to its rights to acquire all

or any of the assets by Credit Bid provided such Credit Bid includes other customary terms and conditions in the proposed purchase agreement.

27.    Proceeds of Subsequent Financing.    If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in the Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) or in violation of the DIP Documents at any time prior to the indefeasible repayment in full, in cash of all DIP Obligations and Prepetition Revolving Loan Secured Obligations, and the termination of the DIP Agents' and DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agents to be applied in accordance with this Interim Order and the DIP Documents.

28.    Cash Collection.    From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Collateral or Prepetition Collateral or services provided by any Debtor and all Cash Collateral (except as otherwise set forth in the DIP Agreement) that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Revolving Loan Documents (or in such other accounts as are designated by the DIP Agents from time to time) (collectively, the "Cash Collection Accounts"), which accounts (except as otherwise set forth in the DIP Agreement) shall be subject to the sole dominion and control of the DIP Agents; provided that

after the DIP Obligations and Prepetition Revolving Loan Secured Obligations have been indefeasibly paid in full in cash and the DIP Lenders' commitments to lend have terminated, such accounts shall be subject to the sole dominion and control of the Prepetition Vendor Program Loan Agent or Prepetition Term Loan Agent, as applicable, unless otherwise ordered by the Bankruptcy Court. All proceeds and other amounts in the Cash Collection Accounts shall be remitted to the DIP Agents for application in accordance with the DIP Documents and this Interim Order. Unless otherwise agreed to in writing by the DIP Agents and the Prepetition Revolving Loan Agents, or otherwise provided for herein, the Debtors shall maintain no accounts except those identified in any cash management order entered by the Court (a "Cash Management Order"). The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order), are authorized to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP Agents.

29.     **Maintenance of DIP Collateral.** Until the indefeasible payment in full, in cash of all DIP Obligations and all Prepetition Revolving Loan Secured Obligations, and the termination of the DIP Agents' and the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition Documents, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any Cash Management Order that has first been agreed to by the DIP Agents or as otherwise required by the DIP Documents or this Interim Order.

30.     **Disposition of DIP Collateral.** The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or Prepetition Collateral other than in the ordinary course of business without the prior written consent of the DIP Agents

and each of the Prepetition Revolving Loan Agents (and no such consent shall be implied, from any other action, inaction or acquiescence by any of the DIP Agents, the DIP Lenders or the Prepetition Revolving Loan Agents, or from any order of this Court), except as otherwise provided for in the DIP Documents.

31.    Termination Date.    On the Termination Date, at the option of the DIP Agents: (a) all applicable DIP Obligations shall be immediately due and payable, all commitments to extend credit under the DIP Facility will terminate, other than as required in paragraph 40 with respect to the Carve Out, all treasury and cash management, hedging obligations and bank product obligations constituting Obligations (as defined in the DIP Agreement) shall be cash collateralized, and all letters of credit shall be cash collateralized in an amount equal to 105% of the face amount thereof, bank product obligations shall have been cash collateralized in a manner and amount acceptable to the DIP Agents; (b) all authority to use Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral to pay payroll obligations (other than severance) and other expenses critical to keep the businesses of the Debtors operating in accordance with the Budget; and (c) otherwise exercise rights and remedies under the DIP Documents in accordance with this Interim Order (including paragraph 34).

32.    Events of Default.    The occurrence of any of the following events, unless waived by the DIP Agents in writing and in accordance with the terms of the DIP Agreement, shall constitute an event of default (collectively, the "Events of Default"): (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order; or (b) the occurrence of an "Event of Default" under the DIP Agreement.

33.    <u>Case Milestones</u>.  As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the bankruptcy related affirmative covenants (as set forth in Section 6.28 the DIP Agreement, the "<u>Case Milestones</u>").  For the avoidance of doubt, the failure of the Debtors to comply with any of the Case Milestones shall (a) constitute an Event of Default under (i) the DIP Agreement and (ii) this Interim Order; and (b) subject to the expiration of the Remedies Notice Period (as defined herein), result in the automatic termination of the Debtors' authority to use Cash Collateral under this Interim Order; and (c) permit the DIP Agents, subject to paragraph 34, to exercise the rights and remedies provided for in this Interim Order and the DIP Documents.

34.    <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default under any of the DIP Documents, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order, the DIP Documents and the Remedies Notice Period, the DIP Agents may in their sole discretion (a) declare (any such declaration shall be referred to herein as a "<u>Termination Declaration</u>," and such date a Termination Declaration is delivered shall be referred to herein as the "<u>Termination Date</u>") any or all of the following: (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination, reduction, or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the applicable DIP Agents and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice (as defined herein) to the

Debtors and their counsel, the U.S. Trustee, and lead counsel to any Committee (if appointed) or (b) send a reservation of rights notice to the Debtors, which notice may advise the Debtors that any further advance under the DIP Facility will be made in the sole discretion of the DIP Agents and/or DIP Lenders. The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to any Committee (if appointed), and the U.S. Trustee. The automatic stay in the Cases otherwise applicable to the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties is hereby modified so that seven (7) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period"): (a) the DIP Agents shall be entitled to exercise all rights and remedies, in accordance with the DIP Documents and this Interim Order, to satisfy the DIP Obligations, DIP Superpriority Claim, and DIP Liens, subject to the Carve Out; and (b) the Prepetition Revolving Loan Agents shall be entitled to exercise all rights and remedies to satisfy the relevant Prepetition Secured Obligations, Adequate Prepetition Superpriority Claims, and Prepetition Adequate Protection Liens, subject to the Carve Out. During the Remedies Notice Period, the Debtors and/or any Committee (if appointed) shall be entitled to seek an emergency hearing within the Remedies Notice Period. Unless the Court orders otherwise, the automatic stay, as to the DIP Agents, DIP Lenders, and the Prepetition Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Agents shall be permitted to exercise all remedies set forth herein, in the DIP Documents, the Prepetition Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with the Intercreditor Agreement, as applicable, and paragraph 30 of this Interim Order.

35.    Good Faith; No Modification or Stay of this Interim Order.    The DIP Agents, the DIP Lenders, and the Prepetition Secured Parties have acted at arms' length, in good faith, in connection with this Interim Order and are entitled to rely upon the protections granted herein and by sections 363(m) and 364(e) of the Bankruptcy Code.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with sections 363(m) and 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reargued, reconsidered, reversed, modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties are entitled to the protections provided in sections 363(m) and 364(e) of the Bankruptcy Code to the maximum extent set forth therein.

36.    DIP and Other Expenses.    The Debtors are authorized to pay all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of (i) the DIP Agents and the DIP Lenders in connection with the DIP Facility, as provided in the DIP Documents whether or not the transactions contemplated hereby are consummated, and (ii) the Prepetition Secured Parties, including attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses as set forth in the Prepetition Documents, subject to the provisions set forth in paragraph 17 herein.  Subject to the review procedures set forth in this paragraph 36, payment of all such fees and expenses shall not be subject to allowance by the Court.  Professionals for the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines.  However any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its invoices (which shall not be required to contain time entries, but shall include a general, brief

description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for a Committee (if appointed) contemporaneously with the delivery of such invoices to the Debtors.  Any objections raised by the Debtors, the U.S. Trustee, or a Committee (if appointed) with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of the receipt of such invoice; if after ten (10) days such objection remains unresolved, it will be subject to resolution by the Court.  Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors.  Notwithstanding the foregoing, the Debtors are authorized to pay on the Closing Date (as defined in the DIP Agreement) all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Agents and the DIP Lenders incurred on or prior to such date without the need for any professional engaged by the DIP Agents and/or the DIP Lenders to first deliver a copy of its invoice or other supporting documentation.  No attorney or advisor to the DIP Agents or the DIP Lenders shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Any and all fees, costs, and expenses paid prior to the Petition Date by the Debtors to the (i) DIP Agents or DIP Lenders in connection with or with respect to the DIP Facility; and (ii) Prepetition Secured Parties in connection or with respect to these matters, are hereby approved in full and shall not be subject to avoidance, disgorgement or any similar form of recovery by the Debtors or any other person.

37.   <u>Indemnification</u>.

(a)     Subject to entry of a Final Order, the Debtors shall indemnify and hold harmless the DIP Agents and the DIP Lenders and each of their respective directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained, or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Documents, the DIP Facility or the transactions contemplated thereby and by this Interim Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Documents and as further described therein and herein, or in connection with this Case, any plan, or any action or inaction by the Debtors, provided the indemnified party shall not settle any claim without the consent of the Debtors.  The indemnity includes indemnification for each of the DIP Agents' exercise of discretionary rights granted under the DIP Facility.  In all such litigation, or the preparation therefor, each of the DIP Agents and the DIP Lenders shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel to the extent set forth in the DIP Documents.

(b)     Subject to entry of the Final Order, upon the earlier of (i) entry of the Final Order and the repayment in full in cash of the Prepetition Revolving Loan Obligations, (ii) payment in full in cash of the DIP Obligations, all letters of credit under the DIP Facility having been cancelled, backed, or cash collateralized in accordance with the terms thereof, and all bank product obligations having been cash collateralized in a manner and amount acceptable

to the DIP Agents or (iii) conclusion of the Remedies Notice Period, the Debtors shall deposit $500,000 into an indemnity account (the "Revolving Loan Indemnity Account") subject to (x) first priority liens of the DIP Agents, for the benefit of the DIP Lenders, and the Prepetition Revolving Loan Agents, for the benefit of the Prepetition Revolving Loan Lenders, (y) second priority liens of the Prepetition Vendor Program Loan Agent for the benefit of the Prepetition Vendor Program Loan Secured Parties and (z) third priority liens of the Prepetition Term Loan, in each case unless otherwise ordered by the Bankruptcy Court. The Revolving Loan Indemnity Account shall be released and the funds applied in accordance with paragraph 24 of this Interim Order upon the indefeasible payment in full, in cash of the DIP Obligations and the Prepetition Revolving Loan Obligations, and all letters of credit related thereto having been cancelled, backed, or cash collateralized in accordance with the terms thereof, and all bank product obligations having been cash collateralized in a manner and amount acceptable to the DIP Agents and the Prepetition Revolving Loan Agents (as applicable), and the receipt by the DIP Agents, the Prepetition Revolving Loan Agents, the DIP Lenders and each of the Prepetition Revolving Loan Lenders of releases from the Debtors and their estates, with respect to any claims arising out of or related to the DIP Documents or the Prepetition Revolving Loan Documents, acceptable to the DIP Agents, the Prepetition Revolving Loan Agents, the DIP Lenders and the Prepetition Revolving Loan Lenders, each in their sole discretion.

38.    Proofs of Claim. The DIP Agents, the DIP Lenders, and the Prepetition Secured Parties will not be required to file proofs of claim in the Cases or Successor Cases for any claim allowed herein. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Cases or Successor Cases to the contrary, each of (a) the Prepetition Revolving Loan Agents on behalf of themselves and the Prepetition Revolving Loan

Secured Parties, (b) the Prepetition Term Loan Agent on behalf of itself and the Prepetition Term Loan Secured Parties, and (c) the Prepetition Vendor Program Loan Agent on behalf of itself and the Prepetition Vendor Program Loan Secured Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in the Cases or Successor Cases for any claim allowed herein.  Any proof of claim filed by the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, or the Prepetition Vendor Program Loan Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Revolving Loan Secured Parties, Prepetition Term Loan Secured Parties, or Prepetition Vendor Program Loan Secured Parties, respectively.  Any order entered by the Court in relation to the establishment of a bar date in the Cases or Successor Cases shall not apply to any claim of the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties arising under, or in connection with, the DIP Documents or the Prepetition Documents, as applicable.

39.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Agents and the DIP Lenders under the DIP Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the Prepetition Agents reasonable access upon reasonable notice and during normal operating hours to the Debtors' premises and their books and records in accordance with the DIP Documents and the Prepetition Documents, as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP

Agents and the Prepetition Agents all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtors.

40.  Carve Out.

(a)  Subject to the terms and conditions contained in this paragraph 40, the DIP Liens, DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims are all subordinate to the following (collectively, the "Carve Out"):

(i)  The payment of fees pursuant to 28 USC section 1930 (a)(6) together with the statutory rate of interest, which fees shall not be limited to amounts that may be set forth in the Budget, and fees required to be paid to the Clerk of this Court pursuant to 28 USC section 156(c);

(ii)  All amounts reflected in the Weekly Fee Reports (as defined in the DIP Agreement) submitted by professionals retained by the Debtors or any Committee that may be appointed (the "Case Professionals"), through the date of service by the DIP Agents of a Carve Out Trigger Notice (as defined below ), which incurred amounts shall be funded by the DIP Lenders in accordance with the DIP Documents into a segregated escrow account (the "Professional Fee Escrow Account") in two parts: (1) first, on Friday of each week in accordance with the amounts reflected in the Budget for such week, and (2) second, for any Case Professional who has timely delivered a Weekly Fee Report, on Wednesday of the following week, any amounts in the Weekly Fee Report in excess of those reflected in the Budget for such week; and

(iii)  All accrued and unpaid fees, disbursements and expenses incurred by the Case Professionals from and after the date of the service of a Carve Out Trigger Notice, to

the extent allowed at any time, in an aggregate amount not to exceed $350,000 (the "Carve Out Advance"). The Carve Out Advance shall be funded into the Professional Fee Escrow Account on the Closing Date (as defined in the DIP Agreement). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered (i) by the DIP Agents to the lead counsel for the Debtors, the U.S. Trustee, and any Committee (if appointed), which notice may be delivered at any time by the DIP Agents (1) in connection with the repayment in full, in cash of the DIP Obligations and the Prepetition Revolving Loan Obligations and all letters of credit related thereto having been cancelled, backed, or cash collateralized in accordance with the terms thereof, and all bank product obligations having been cash collateralized in a manner and amount acceptable to the DIP Agents and the Prepetition Revolving Loan Agents (as applicable) or (2) following the occurrence and continuance of any Event of Default and, in any case, shall specify that it is a "Carve Out Trigger Notice" and may, at the option of the DIP Agents and the Prepetition Revolving Loan Agents, in their sole discretion, expressly state that no additional Committed Revolving Loans (as defined in the DIP Agreement) may be requested to fund the Carve Out.

(b)    Upon the earlier of and concurrent with (i) the repayment in full in cash of the DIP Obligations and the Prepetition Revolving Loan Obligations and all letters of credit related thereto having been cancelled, backed, or cash collateralized in accordance with the terms thereof, all bank product obligations having been cash collateralized in a manner and amount reasonably acceptable to the DIP Agents or the Prepetition Revolving Loan Agents (as applicable) or (ii) delivery of a Carve Out Trigger Notice, an amount equal to the Carve Out (as of the date of the Carve Out Trigger Notice) shall be funded (only to the extent not previously funded) with the proceeds of the DIP Facility (which funding shall then constitute DIP

Obligations and be included in the repayment amount) and/or Cash Collateral.  Following delivery of a Carve Out Trigger Notice, upon the funding of the Carve Out as of the date of service of the Carve Out Trigger Notice as described above, none of the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties shall have any further liability whatsoever for the Carve Out (including any amounts described in subsections (a)(i)-(iii) above) or any subordination in respect thereof.  None of the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties shall be responsible for funding any "success", "restructuring", "transaction" or similar fee payable to the Debtors' investment banker or financial advisor, and in no event shall any such amounts be paid out of the Carve Out.  For the avoidance of doubt (but subject to subsection (a)(iii) above), the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claim, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens or claims securing the DIP Obligations and/or the Prepetition Secured Obligations.

(c)     Nothing herein, including the inclusion of line items or other amounts in the Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expense of the Debtors, of any Committee, or of any other person or shall affect the right of the DIP Agents, the DIP Lenders, or any of the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  The DIP Agents, the DIP Lenders, and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agents, the DIP Lenders or the Prepetition Secured Parties in any way to pay compensation

to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Moreover, to the extent any fees, disbursements, costs or expenses, incurred by any Case Professional shall be disallowed by final order of this Court, such disallowed amounts shall be released from the Professional Fee Escrow Account and applied in accordance with this Interim Order and the DIP Documents.

41.    <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out</u>. The DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Agents', the DIP Lenders', or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral except as permitted herein; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of the Collateral without the consent of the DIP Agents and the Prepetition Revolving Loan Agents; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agents and Prepetition Revolving Loan Agents; (d) incurring Indebtedness (as defined in the DIP Agreement) without the prior consent of the DIP Agents, except to the extent permitted under the DIP Documents; (e) seeking to amend or modify any of the rights granted to, the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties under this Interim Order, the Final Order, the DIP Documents, or the Prepetition Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, the DIP Obligations, the Prepetition Liens, the Prepetition Secured Obligations, the DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties, respectively; (g) asserting, commencing, or prosecuting any claims or causes of action

whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, the Prepetition Secured Obligations or any other rights or interests of any of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided, however*, that the Carve Out and such collateral proceeds and loans under the DIP Agreement may be used for allowed fees and expenses, in an amount not to exceed $25,000 in the aggregate (the "Investigation Budget Amount"), incurred solely by a Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens within sixty (60) calendar days from formation of a Committee.

42.    Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professional, and the right of the DIP Agents, the DIP Lenders, and/or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses is fully preserved.  If any of the DIP Agents, the DIP Lenders, and/or the Prepetition Secured Parties objects to the fees and expenses set forth in any of the Weekly Fee Reports provided by any Case Professional, until such objection is overruled or otherwise resolved by final order (that has not been vacated or stayed, unless the stay has been vacated), the applicable Case Professional shall not be entitled to receive from the

Professional Fee Escrow Account any amounts in dispute in excess of the amounts reflected for the applicable Case Professional in the Budget, and such amounts shall remain in the Professional Fee Escrow Account until such objection has been resolved.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, not to exceed with any professional the applicable amount reflected in the most recent Budget approved by the DIP Agents.

43.    <u>Effect of Stipulations on Third Parties</u>.

(a)    *Generally*.  The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order (collectively, the "<u>Prepetition Lien and Claim Matters</u>") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including a Committee (if appointed), unless a party in interest with requisite standing (other than the Debtors, as to which any Challenge (as defined herein) is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings, and timely and properly commenced  an adversary proceeding or contested matter (in each case subject to the limitations set forth in this paragraph 43) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "<u>Challenge</u>") by no later than the earlier of (a) 60 days from the date of formation of a Committee, or (b) 75 days following the entry of the Interim Order if no Committee is appointed (the "<u>Challenge Deadline</u>"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Revolving Loan

Agents (with respect to the Prepetition Revolving Loan Documents), the Prepetition Term Loan

Agent (with respect to the Prepetition Term Loan Documents), and the Prepetition Vendor

Program Loan Agent (with respect to the Prepetition Vendor Program Loan Documents), or by

this Court for good cause shown pursuant to an application filed by a party in interest prior to the

expiration of the Challenge Deadline; *provided* that if a chapter 11 trustee is appointed or the

Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Deadline,

the chapter 11 or chapter 7 trustee, as applicable, shall have until the later of (1) the Challenge

Deadline or (2) the tenth (10th) day after the appointment of the chapter 11 trustee or the

conversion of the Cases to cases under chapter 7, as applicable, to commence a Challenge,

subject to any further extension by order of the Court, and (ii) this Court enters judgment in favor

of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and

any such judgment has become a final judgment that is not subject to any further review or

appeal.

(b)    *Binding Effect.*  To the extent no Challenge is timely commenced

by the Challenge Deadline with respect to any Prepetition Lien and Claim Matters, or to the

extent such proceeding does not result in a final and non-appealable judgment or order of this

Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further

notice, motion, or application to, order of, or hearing before, this Court and without the need or

requirement to file any proof of claim, any such Prepetition Lien and Claim Matters shall,

pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or

party in interest in the Case, and their successors and assigns, and in any Successor Case for all

purposes and shall not be subject to challenge or objection by any party in interest, including a

trustee, responsible individual, examiner with expanded powers, or other representative of the

Debtors' estate. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is specifically and expressly the subject of a timely filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above, and only as to plaintiffs or movants that have complied with the terms hereof; *provided* that if and to the extent any Challenge to any Prepetition Lien and Claim Matters is withdrawn, denied or overruled by a non-appealable final order, such Prepetition Lien and Claim Matters shall also be binding on the Debtors' estate and all parties in interest. To the extent any such Challenge proceeding is timely and properly commenced, the applicable Prepetition Secured Parties reserve their right to seek payment or reimbursement of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred in defending themselves in any such proceeding as adequate protection. Upon a successful Challenge brought pursuant to this paragraph 43, the Court may fashion any appropriate remedy.

44. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

45. <u>Section 506(c) Claims</u>. Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agents, the DIP Lenders or any of the Prepetition Secured Parties, or any of their respective claims, or any DIP Collateral or the Prepetition Collateral securing the DIP Obligations, the Prepetition Revolving Loan Obligations, the Prepetition Term Loan

Obligations or Prepetition Vendor Program Loan Obligations, pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

46.    No Marshaling/Applications of Proceeds.  Subject to entry of a Final Order, the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.

47.    Section 552(b).  Subject to entry of a Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

48.    Access to DIP Collateral.  Upon expiration of the Remedies Notice Period, unless otherwise ordered by the Bankruptcy Court, the DIP Agents, DIP Lenders, and the Prepetition Secured Parties shall be permitted to (a) access and recover any and all DIP Collateral, and (b) enter onto any leased premises of any Debtor and exercise all of the Debtors' rights and privileges as lessee under such lease in connection with an orderly liquidation of the DIP Collateral, provided, however, in the case of clause (b), the DIP Agents, DIP Lenders and/or Prepetition Secured Parties can only enter upon a leased premises after an Event of Default in accordance with (i) a separate written agreement by and between the DIP Agents, DIP Lenders,

and the Prepetition Secured Parties, as applicable, and any applicable landlord, (ii) pre-existing rights of the DIP Agents, DIP Lenders, and the Prepetition Secured Parties, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the applicable DIP Agent, DIP Lender, or Prepetition Secured Party on such notice to the landlord as shall be required by this Court; provided, further, however, solely with respect to rent due to a landlord of any such leased premises, the DIP Agents, DIP Lenders, and/or the Prepetition Secured Parties, as applicable, shall be obligated only to reimburse the Debtors for the payment of rent of the Debtors that first accrues after delivery of the Termination Declaration in accordance with paragraph 35 herein that is payable during the period of such occupancy by the DIP Agents, DIP Lenders, and/or the Prepetition Secured Parties, as applicable, calculated on a daily per diem basis; provided, further, that nothing herein shall relieve the Debtors of their obligations pursuant to section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to delivery of the Termination Declaration through and including any assumption and/or rejection of any lease. Nothing herein shall require the DIP Agents, DIP Lenders, or the Prepetition Secured Parties to assume any lease as a condition to the rights afforded in this paragraph.

49.    _Limits on Lender Liability._ Subject to entry of a Final Order, nothing in this Interim Order, any of the DIP Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses, whether before or after the Petition Date, or in connection with the administration of these Cases. The DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall not, solely by reason of having made loans under the

DIP Facility, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Interim Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors.

50.    <u>Insurance Proceeds and Policies</u>.  Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agents (on behalf of the DIP Lenders), the Prepetition Revolving Loan Agents (on behalf of the Prepetition Revolving Loan Lenders), the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Lenders), and the Prepetition Vendor Program Loan Agent (on behalf of the Prepetition Vendor Program Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral or the Prepetition Collateral.

51.    <u>Liability</u>.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of the Debtors' estates, it being understood, however, that the Debtors shall be liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documents.

52.    <u>No Superior Rights of Reclamation</u>.  Based on the continuation of the Prepetition Liens, the relation back of the DIP Liens, and the integrated nature of the DIP Facility and the Prepetition Documents, in no event shall any alleged right of reclamation or

return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

53.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the Prepetition Documents, the Intercreditor Agreement and the Term Vendor Intercreditor Agreement: (a) the DIP Agents', the DIP Lenders', and the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agents, the DIP Lenders, and/or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Cases or Successor Cases, conversion of the Cases to cases under Chapter 7, or the appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Committee's (if appointed), or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.

54.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Documents, or

applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties.

55.    <u>Binding Effect of Interim Order</u>.  Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, all other creditors of the Debtors, any Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

56.    <u>No Modification of Interim Order</u>.  Until and unless the DIP Obligations and the Prepetition Revolving Loan Secured Obligations (other than contingent obligations with respect to then unasserted claims) have been indefeasibly paid in full in cash, and all letters of credit under the DIP Facility and the Prepetition Revolving Loan Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof, bank product obligations shall have been cash collateralized in a manner and amount acceptable to the DIP Agents and the Prepetition Revolving Loan Agents, as applicable (such payments being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agents (or the Prepetition Revolving Loan Agents, as applicable), (i) any modification, stay, vacatur, or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any

administrative expense of the kind specified in sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Agents (or the Prepetition Revolving Loan Agents, as applicable) for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP Agents, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition Revolving Loan Agents, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens of the Prepetition Revolving Loan Secured Parties, except as specifically provided in the DIP Documents. The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agents and the Prepetition Revolving Loan Agents, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agents or the Prepetition Revolving Loan Agents.

57.    Continuing Effect of Intercreditor Agreement and Term Vendor Intercreditor Agreement. The Debtors and the Prepetition Secured Parties (as applicable) each shall be bound by, and in all respects the Prepetition Secured Facilities shall be governed by, and be subject to all the terms, provisions and restrictions of the Intercreditor Agreement, the Term Vendor Intercreditor Agreement and any other subordination agreement governing the rights and obligations of the Prepetition Secured Parties in effect as of the Petition Date.

58.    <u>Interim Order Controls</u>.   In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

59.    <u>Discharge</u>.    The DIP Obligations, the Prepetition Revolving Loan Obligations and the obligations of the Debtors with respect to the adequate protection provided herein to the Revolving Loan Secured Parties shall not be discharged by the entry of an order confirming any plan of reorganization in the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), and all letters of credit under the DIP Facility and the Prepetition Revolving Loan Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof, bank product obligations have been cash collateralized in a manner and amount acceptable to the DIP Agents, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Agents and the Prepetition Revolving Loan Agents has otherwise agreed in writing.  The Debtors shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment in full in cash of the DIP Obligations and the Prepetition Revolving Loan Obligations (other than contingent indemnification obligations for which no claim has been asserted), and all letters of credit under the DIP Facility and the Prepetition Revolving Loan Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof, bank product obligations shall have been cash collateralized in a manner and amount acceptable to the DIP Agents and the Prepetition Revolving Loan Agents, and the payment of the Debtors' obligations to the Prepetition Revolving Loan Secured

Parties with respect to the adequate protection provided for herein, in full, in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "Prohibited Plan or Sale") without the prior written consent of each of the DIP Agents, the DIP Lenders, and the Prepetition Revolving Loan Agents, as applicable. For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

60.    Survival.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Cases; (b) converting the Cases to cases under Chapter 7 of the Bankruptcy Code; (c) dismissing the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing the Cases or Successor Cases.    The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties granted pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such orders described in (a)-(d), above, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until: (i) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full in cash and all letters of credit under the DIP Facility shall have been cancelled or cash collateralized in accordance with the terms thereof, and all bank product obligations shall have been cash collateralized in a manner and amount acceptable to the DIP Agents (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms),

and all commitments to extend credit under the DIP Facility are terminated; and (ii) in respect of the Prepetition Revolving Loan Facility, all of the Prepetition Revolving Loan Obligations pursuant to the Prepetition Revolving Loan Documents and this Interim Order, have been indefeasibly paid in full in cash, and all letters of credit under the Prepetition Revolving Loan Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof, and all bank product obligations shall have been cash collateralized in a manner and amount acceptable to the Prepetition Revolving Loan Agents. The terms and provisions concerning the indemnification of the DIP Agents and the DIP Lenders shall continue in the Cases, and in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations.

61.    <u>Final Hearing</u>. The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for 8/14, **2019, at 2:00p.m. (ET)** before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge at the United States Bankruptcy Court for the District of Delaware. On or before July 16, 2019, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on [ 8/7 ], **2019, at 4:00 p.m. (ET)**, which objections shall be served so as to be received

on or before such date by: (i) counsel to the Debtors, Paul Hastings, LLP, 71 S. Wacker Dr., 45th

Floor, Chicago, Illinois 60606, Attn: Matthew M. Murphy, and 1117 South California Ave., Palo

Alto, California 94304, Attn: Todd M. Schwartz, and Klehr Harrison Harvey Branzburg LLP,

919 N. Market Street, Suite 1000, Attn: Domenic E. Pacitti; (ii) counsel to the DIP Agents and

the Prepetition Revolving Loan Agents, Choate, Hall & Stewart, LLP, Two International Place,

Boston, Massachusetts 02110, Attn: John F. Ventola and Jonathan D. Marshall, and Richards,

Layton & Finger, P.A., 920 N. King. St., Wilmington, Delaware 19801, Attn: Mark D. Collins

and John H. Knight; (iii) counsel to the lenders under the Prepetition Vendor Program Credit

Agreement and Prepetition Term Loan Credit Agreement, Winston & Strawn LLP, 200 Park

Avenue, New York, New York 10166, Attn: Gregory M. Gartland and Dov Goodman and

Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801,

Attn: Blake Cleary; (v) counsel to the Prepetition Term Loan Agent and Prepetition Vendor

Program Loan Agent, Covington & Burling, 620 Eighth Avenue, New York, NY 10018-1405,

Attn: Ron Hewitt and Alexander Clark, (vi) counsel to the Committee (if appointed); and (vii)

Linda Richenderfer, Esquire, Office of the United States Trustee, 844 N. King Street, Room

2207, Lockbox 35, Wilmington, Delaware 19801.

62.    *Nunc Pro Tunc* Effect of this Interim Order.  This Interim Order shall

constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall

take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution

thereof.

63.    Treatment of Proceeds from Sale of Texas Assets.  As adequate protection

for the claims of the Local Texas Tax Authorities, the Debtors will fund a segregated account

(the "Local Texas Tax Account") in an amount to be determined ˄in the Final Order from the proceeds of the non-

ordinary course sale of any of the Debtors' assets located in the state of Texas that occurs after the Petition Date.  The liens asserted by the Local Texas Tax Authorities (and all other liens junior to those of the Local Texas Tax Authorities) shall attach to the Local Texas Tax Account to the same extent and with the same priority as the liens the Local Texas Tax Authorities assert against such assets of the Debtors.  The Local Texas Tax Account shall be maintained solely for the purpose of providing adequate protection for the Local Texas Tax Authorities prior to the distribution of any proceeds to any other creditor and shall constitute neither the allowance of the claims of the Local Texas Tax Authorities, nor a floor or cap on the amounts the Local Texas Tax Authorities may be entitled to receive.  All parties' rights to object to the priority, validity, amount and extent of the claims and liens asserted by the Local Texas Tax Authorities are fully preserved.  Funds in the Local Texas Tax Account may be distributed upon agreement between the Local Texas Tax Authorities and the Debtors, with the consent of the DIP Agents, or by subsequent order of the Court, duly noticed to the Local Texas Tax Authorities and the DIP Agents.

64.    Consulting Agreement.  Subject to paragraph 43, the liens and security interests granted pursuant to the Consulting Agreement dated as of July 3, 2019 by and between the Debtors and a contractual joint venture comprised of Hilco Merchant Resources LLC and SB360 Capital Partners (the "Consulting Agreement") are valid, enforceable, perfected, non-avoidable, and have the priority set forth in the Consulting Agreement.  Nothing in this Interim Order or the DIP Documents shall prime the liens and security interests granted on the "Additional Agent Goods" (as defined in the Consulting Agreement) pursuant to the Consulting Agreement.  Notwithstanding anything to the contrary herein, the DIP Agents (subject to the order authorizing the assumption of the Consulting Agreement) and the DIP Lenders shall have

no obligation (other than to make proceeds available in accordance with the terms of the DIP Documents) to fund any payments to be made under the Consulting Agreement.

        65.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, and/or this Interim Order.

Dated: _____ 7/12, 2019

                                         UNITED STATES BANKRUPTCY JUDGE