**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CHARMING CHARLIE HOLDINGS INC., *et al.*,[1] | ) | Case No. 19-11534 (CSS) |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | **Re. Docket No. 12** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME THE CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING THE IMPLEMENTATION OF CUSTOMARY STORE BONUS PROGRAM AND PAYMENTS TO NON-INSIDERS THEREUNDER, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"): (a) authorizing the Debtors to assume the Consulting Agreement (the "Consulting Agreement"), by and between certain Debtors and Hilco Merchant Resources, LLC and SB360 Capital Partners, LLC (together, the "Consultant"), a copy of which is attached hereto as **Exhibit 1**; (b) authorizing and approving the conduct of store closing or similar themed sales in accordance with the terms of the store closing procedures (the "Store Closing Procedures") attached hereto as **Exhibit 2**, with such sales to be free and clear of all liens, claims and encumbrances; (c) authorizing the Debtors to conduct the Store Closings; (d) approving the implementation of a bonus program (the "Store Bonus Program") and authorizing payments thereunder to certain non-insider employees; (e) scheduling a final hearing to consider approval of the Motion on a

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Charming Charlie Canada LLC (0693); Charming Charlie Holdings Inc. (6139); Charming Charlie International LLC (5887); Charming Charlie LLC (0263); Charming Charlie Manhattan LLC (7408); Charming Charlie USA, Inc. (3973); and Poseidon Partners CMS, Inc. (3302). The location of the Debtors' headquarters is: 6001 Savoy Drive, Ste. 600, Houston, Texas 77036.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

final basis; and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

A. The Debtors have advanced sound business reasons for seeking to assume the Consulting Agreement and adopt the Store Closing Procedures, on an interim basis subject to the Final Hearing, as set forth in the Motion and at the Hearing, and entering into the Consulting Agreement is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052

B. The Store Closing Procedures are reasonable, and the conduct of the Sales in accordance with the Store Closing Procedures will provide an efficient means for the Debtors to liquidate and dispose of the Store Closure Assets as quickly and effectively as possible and will maximize the returns on the Store Closure Assets.

C. The Consulting Agreement was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith and from arm's length bargaining positions.

D. The operation and effectiveness of the Consulting Agreement on an interim basis is a sound exercise of the Debtors' business judgment.

E. The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

F. The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

G. The Store Closings and Sales are in the best interest of the Debtors' estates.

H. The Debtors have represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers.

I. The entry of this Interim Order is in the best interest of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis as provided herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on 8/14, 2019, at 2:00 p.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on 8/7, 2019, and shall be served on: (a) the Debtors, 6001 Savoy Drive, Ste. 600, Houston, Texas 77036, Attn: Alvaro Bellon; (b) proposed counsel to the Debtors, Paul Hastings LLP, 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Murphy, Nathan Gimpel, and Matthew Smart; (c) proposed co-counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Domenic E. Pacitti, Michael W. Yurkewicz, and Sally E. Veghte; (d) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer, Esq.; (e) counsel to any statutory committee appointed in these chapter 11 cases; (f) counsel to the Prepetition ABL Agents and DIP Agents, Choate, Hall & Stewart, LLP, Two International Place, Boston, Massachusetts 02110, Attn: John F. Ventola and Jonathan D. Marshall, and Richards, Layton & Finger, P.A., 920 N. King. St., Wilmington, Delaware 19801, Attn: Mark D. Collins and John H. Knight; and (g) counsel to the Prepetition Vendor Financing Agent and Prepetition Term Loan Agent, Winston & Strawn LLP, 200 Park Avenue, New York, New York 10166, Attn: Gregory M. Gartland. In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

3. The Debtors and the Consultant are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Interim Order. The failure to specifically include any particular provision of the Consulting Agreement in this Interim Order shall not diminish or impair the effectiveness of such provisions, it being the intent

of this Court that the Consulting Agreement and all of its provisions, payments, and transactions, be and hereby are authorized and approved as and to the extent provided for in this Interim Order.

4. To the extent of any conflict between this Interim Order, the Store Closing Procedures, and the Consulting Agreement, the terms of this Interim Order shall control over all other documents and the Store Closing Procedures shall control over the Consulting Agreement.

5. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall take effect immediately upon its entry.

**I. Effectiveness of the Consulting Agreement.**

6. The Consulting Agreement is operative and effective on an interim basis. The Debtors are authorized to act and perform in accordance with the terms of the Consulting Agreement, including, but not limited to, paying all fees and reimbursing all expenses as required by the Consulting Agreement to the Consultant on a weekly basis from Gross Proceeds (as defined in the Consulting Agreement) without the need for any application of the Consultant or a further order of the Court.

7. Subject to the restrictions set forth in this Interim Order and the Store Closing Procedures, the Debtors and the Consultant hereby are authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Sales; and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Sales prior to the date of this Interim Order, are hereby approved and ratified.

8. Notwithstanding anything to the contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Consultant for any damages arising primarily out of the Consultant's fraud, willful misconduct, or gross negligence.

## II. Authority to Engage in Sales and Conduct Store Closings.

9. The Debtors are authorized, on an interim basis pending the Final Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately continue and conduct the Sales at the Stores in accordance with this Interim Order, the Store Closing Procedures, and the Consulting Agreement, as may be modified by a Side Letter (as defined below) between the Debtors and/or the Consultant and the landlords at the Stores.

10. The Store Closing Procedures are approved in their entirety on an interim basis.

11. The Debtors are authorized to discontinue operations at the Stores in accordance with this Interim Order and the Store Closing Procedures.

12. All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreement or this Interim Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

13. Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including, without limitation, any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Sales and to take the related actions authorized herein.

## III. Conduct of the Sales.

14. All newspapers and other advertising media in which the Sales may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Sales and the sale of Merchandise, FF&E, and Additional Consultant Goods pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise, FF&E, and Additional

Consultant Goods in the manner contemplated by and in accordance with this Interim Order, the Store Closing Procedures, and the Consulting Agreement.

15. Subject to the Dispute Resolution Procedures provided for in this Interim Order and any Side Letter, the Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Store Closings without necessity of further order of this Court as provided in this Interim Order, the Consulting Agreement, or the Store Closing Procedures, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," "going out of business" or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, and street signage; *provided*, *however*, that only Debtor-approved terminology will be used at each Store in connection with the Sales.

16. In accordance with Section J of the Consulting Agreement, the Consultant is authorized to supplement the Merchandise in the Stores with Additional Consultant Goods, provided that any such supplementing with Additional Consultant Goods must be of like kind and no lesser quality than goods sold in the Stores prior to the Petition Date. Sales of Additional Consultant Goods shall be run through the Debtors' cash register systems; provided, however, that the Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise. The Consultant and Merchant shall cooperate to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could identify the Additional Consultant Goods from the Merchandise.

17. All transactions relating to the Additional Consultant Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from Consultant to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "UCC") and not a consignment for security purposes. At all times and for all purposes, the Additional Consultant Goods and their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim against any of the Additional Consultant Goods or the proceeds thereof. The Additional Consultant Goods shall at all times remain subject to the exclusive control of the Consultant. The Debtors shall, at Consultant's sole cost and expense, insure Additional Consultant Goods and, if required, promptly file any proofs of loss with regard thereto.

18. Consultant is hereby granted a first-priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the Additional Consultant Goods proceeds, which security interest shall be deemed perfected on an interim basis pursuant to this Interim Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Consultant is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Consultant's interest in the Additional Consultant Goods (and any proceeds from the sale thereof) as consigned goods thereunder and the Debtors as the consignee therefor, and Consultant's security interest in such Additional Consultant Goods and Additional Consultant Goods proceeds). As part of each weekly reconciliation, the Debtors shall turnover all proceeds

from the sale of Additional Consultant Goods to the Consultant, net of any fee payable to the Debtors pursuant to the Consulting Agreement.

19. Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Merchandise, FF&E, and Additional Consultant Goods, to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners, or other advertising and the Debtors and the Consultant are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (a) the Final Hearing, or (b) within two business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

20. Except as expressly provided in the Consulting Agreement, the sale of the Merchandise, FF&E, and Additional Consultant Goods shall be conducted by the Debtors and the Consultant notwithstanding any restrictive provision of any lease, sublease, license, reciprocal easement agreement, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Sales (including the sale of the Merchandise, FF&E, and Additional Consultant Goods), the necessity of obtaining any third party consents, abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Sales or the Store Closings. Breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Sales are conducted in accordance with the terms of this Interim Order and the

to govern the conduct of the Sales, in matters such as signage, marketing and promotions

Store Closing Procedures. The Consultant and landlords of the Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Store Closing Procedures* without further order of the Court, and such Side Letters shall be binding as among the Consultant and any such landlords, *provided* that nothing in such Side Letters affects the provisions of paragraphs [illegible], 39, 40 of this Interim Order. In the event of any conflict between the Store Closing Procedures, this Interim Order, and any Side Letter, the terms of such Side Letter shall control.

21. Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit expressly granted elsewhere in this Interim Order, no person or entity, including, but not limited to, any landlord, licensor, property owner/manager, service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation or continuation of the Sales or the sale of Merchandise, FF&E, or Additional Consultant Goods, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, property owner/manager, service provider, utility, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding the conduct of the Sales and/or Store Closings, and/or (b) instituting any action or proceeding in any court (other than this Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closings, Sales (including of the Store Closure Asses) or other liquidation sales at the Stores and/or seek to recover damages

for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

22. In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Store Closing Procedures and this Interim Order.

23. During the Sale Term (as defined in the Consulting Agreement), the Consultant shall accept the Debtors' validly issued gift certificates and gift cards that were issued by the Debtors prior to the Sale Commencement Date (as defined in the Consulting Agreement) in accordance with the Debtors' gift certificate and gift card policies and procedures as they existed on the Petition Date, and accept returns of merchandise sold by the Debtors prior to the Sale Commencement Date; *provided*, that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered by the Consultant. For the avoidance of doubt, proceeds from Merchandise sold pursuant to gift certificates and/or gift cards shall be treated as Gross Proceeds (as defined in the Consulting Agreement) for purposes of calculating Consultant's fee under the Consulting Agreement.

24. All sales of Merchandise, FF&E and Additional Consultant Goods shall be "as is" and final. Returns related to the purchase of Store Closure Assets shall not be accepted at stores that are not participating in the Store Closings. However, as to the Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

25. The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. The Consultant shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreement. This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

26. Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell Store Closure Assets—and all sales of Store Closure Assets, whether by the Consultant or the Debtors, shall be—free and clear of any and all of any liens, claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax,

labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights, and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances"); as provided for herein because in each case, one or more of the standards set forth in section 363(f)(1)–(5) has been satisfied; *provided, however*, that any such Encumbrances shall attach to the applicable proceeds of the sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such Encumbrances had with respect to the Store Closure Assets prior to such sale, subject to any claims and defenses that any party may possess with respect thereto and subject to the Consultant's fees and expenses (as provided in the Consulting Agreement).

27. To the extent that the Debtors propose to sell or abandon FF&E that may contain personal and/or confidential information about the Debtors' employees and/or customers (the "Confidential Information"), the Debtors shall remove the Confidential Information from such items of FF&E before such sale or abandonment.

28. The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Merchandise, FF&E and Additional Consultant Goods among, and into, the Stores. Subject to the FF&E Election, the Consultant is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement, including, but not limited to, Store signage related to the Store Closings.

Any abandoned FF&E left in a Store after the later of the date the lease is rejected or the date the Debtors vacate the premises shall be deemed abandoned, and such landlord is authorized to dispose of the abandoned FF&E without further notice and without any liability to any individual or entity that may claim an interest in such property. The automatic stay is modified to the extent necessary to allow such dispositions.

29. Notwithstanding this or any other provision of this Interim Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from (x) guaranteeing a recovery on or otherwise acquiring Merchandise or FF&E that may not be sold during the Sales, subject to reaching an agreement with the Debtors, after consultation with the ABL Agents and the Second Lien Agent (as defined in the Consulting Agreement), with respect to such guarantee or other acquisition and providing notice as would be reasonable under the circumstances; or (y)(1) bidding on the Debtors' assets not subject to the Consulting Agreement pursuant to an agency agreement or otherwise and (2) the Consultant is hereby authorized to bid on and guarantee or otherwise acquire such assets notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such guarantee transaction or acquisition is approved by separate order of this Court.

## IV. Dispute Resolution Procedures with Governmental Units.

30. Nothing in this Interim Order, the Consulting Agreement, or the Store Closing Procedures, releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order. Nothing contained in this Interim Order, the Consulting Agreement, or the Store Closing Procedures shall in any way:

(a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Interim Order, the Consulting Agreement, or the Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Interim Order. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

31. To the extent that the sale of Merchandise, FF&E, and Additional Consultant Goods is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non- deceptive, customary advertising such as signs, banners, posting of signage, and use of

sign- walkers solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits, or bulk sale restrictions that would otherwise apply solely to the sale of the Merchandise, FF&E, and Additional Consultant Goods, the Dispute Resolution Procedures in this section shall apply:

a. Provided that the Sales are conducted in accordance with the terms of the Interim Order or the Final Order, as applicable, and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units (as defined in the Bankruptcy Code) that exempt court-ordered sales from their provisions, the Debtors and the Consultant will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of the Interim Order or the Final Order, as applicable, and the Store Closing Procedures without the necessity of further showing compliance with any such Liquidation Sale Laws.

b. Within five business days after entry of the Interim Order, the Debtors will serve by email, facsimile, or first-class mail, copies of the Interim Order, the proposed Final Order, the Consulting Agreement, and the Store Closing Procedures on the following: (i) the landlords for the Stores; (ii) the Attorney General's office for each state in which the Sales are being held; (iii) the county consumer protection agency or similar agency for each county in which the Sales are being held; (iv) the division of consumer protection for each state in which the Sales are being held; (v) the chief legal counsel for each local jurisdiction in which the Sales are being held (collectively, the "Dispute Notice Parties").

c. To the extent that there is a dispute arising from or relating to the Sales, the Interim Order, or the proposed Final Order, as applicable, the Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Bankruptcy Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten days following entry of the Interim Order any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (i) proposed counsel to the Debtors, Paul Hastings LLP, 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Murphy, Nathan Gimpel, and Matthew Smart; (ii) proposed co-counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, Delaware, 19801, Attn: Domenic E. Pacitti, Michael W. Yurkewicz, and Sally E. Veghte; (iii) the Consultant, (a) Hilco Merchant Resources, LLC, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Attn: Ian Fredericks; and (b) SB360 Capital Partners, LLC, 1010 Northern Boulevard, Suite 340, Great Neck, NY

11021, Attn: Robert Raskin; (iv) counsel for the Consultant, Pepper Hamilton LLP, 1313 Market Street, Suite 5100, Wilmington, DE 19801 Attn: Douglas D. Herrmann and Marcy J. McLaughlin; (v) counsel to the Prepetition ABL Agents and DIP Agents, Choate, Hall & Stewart, LLP, Two International Place, Boston, Massachusetts 02110, Attn: John F. Ventola and Jonathan D. Marshall, and Richards, Layton & Finger, P.A., 920 N. King. St., Wilmington, Delaware 19801, Attn: Mark D. Collins and John H. Knight; and (vi) counsel to the Prepetition Vendor Financing Agent and Prepetition Term Loan Agent, Winston & Strawn LLP, 200 Park Avenue, New York, New York 10166, Attn: Gregory M. Gartland. If the Debtors, the Consultant, and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d. In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, the Consultant or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of the Interim Order or the Final Order, as applicable, nor the conduct of the Debtors or the Consultant pursuant to the Interim Order or the Final Order, as applicable violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or the Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Sales pursuant to the Interim Order or the Final Order, absent further order of the Court. Upon the entry of the Interim Order or the Final Order, as applicable, the Court grants authority for the Debtors and the Consultant to conduct the Sales pursuant to the terms of the Interim Order or the Final Order, as applicable, the Consulting Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

e. If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) above by serving a notice to the applicable parties and proceeding thereunder in

accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo.*

32. Subject to paragraphs 30 and 31 above, each and every federal, state, or local agency, departmental unit, or Governmental Unit with regulatory authority over the Sales, and all newspapers and other advertising media in which the Sales are advertised shall consider this Interim Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required, to post any bond, to conduct the Sales.

33. Within three business days of this Interim Order, the Debtors shall serve copies of this Interim Order, the Consulting Agreement, and the Store Closing Procedures via e-mail, facsimile, or regular mail, on: (a) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer, Esq.; (b) counsel to any statutory committee appointed in these chapter 11 cases; (c) counsel to the Prepetition ABL Agents and DIP Agents, Choate, Hall & Stewart, LLP, Two International Place, Boston, Massachusetts 02110, Attn: John F. Ventola and Jonathan D. Marshall, and Richards, Layton & Finger, P.A., 920 N. King. St., Wilmington, Delaware, 19801, Attn: Mark D. Collins and John H. Knight; (d) counsel to the Prepetition Vendor Financing Agent and Prepetition Term Loan Agent, Winston & Strawn LLP, 200 Park Avenue, New York, New York 10166, Attn: Gregory M. Gartland; (e) all parties known to the Debtors who hold any liens or security interest in the Debtors' assets who have filed UCC-1 financing statements against the Debtors, or who, to the Debtors' knowledge, assert liens against the Store Closure Assets; (f) all state attorneys general in which the Store Closure Assets are located; (g) municipalities in which the Store Closure Assets are located; (h) all of the Debtors' landlords at the locations of the Sales; (i) all applicable state and consumer protection agencies; (j) all applicable federal, state, and local taxing and

regulatory authorities having jurisdiction over the Merchandise and the FF&E; (k) the Internal Revenue Service; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**V. Other Provisions.**

34. The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Consultant, in each case, other than as expressly provided for in the Consulting Agreement.

35. The Debtors shall not be required to comply with any state or local law requiring that the Debtors pay an employee substantially contemporaneously with his or her termination; *provided*, *however*, that the Debtors shall pay any accrued wages to terminated employees as expeditiously as possible.

36. The Debtors are authorized to issue postpetition checks, or to effectuate postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of payments made in accordance with this Interim Order that are dishonored or rejected.

37. Each of the Debtors' banks and financial intuitions is authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Interim Order and any other order of this Court.

38. On a confidential basis and upon the written (including email) request of the U.S. Trustee, the Prepetition ABL Agents and the DIP Agents, the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent, or the Committee, the Debtors shall provide such requesting party, if any, with copies of periodic reports concerning the Sales that are prepared by the Debtors, their professionals or the Consultant; *provided*, *however*, that the foregoing shall not

require the Debtors, their professionals, or the Consultant to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, their professionals, or the Consultant in connection with the Sales.

39. Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Interim Order, any authorization contained in this Interim Order, or any claim for which payment is authorized hereunder, shall be subject to any orders of this Court approving any debtor in possession financing for, or any use of cash collateral by, the Debtors, and any documents providing for such debtor in possession financing and the budget governing such debtor in possession financing and use of cash collateral; *provided, however,* all amounts due to the Consultant under the Consulting Agreement shall be earmarked and paid by the Debtors from proceeds of the Sales and shall not be reduced or capped by the terms or conditions of any pre- or post-petition financing facilities, restrictions on the use of cash collateral, or orders related thereto; *provided further*, *however*, that the Debtors' pre- and post-petition lenders shall have no obligation to pay any such amounts (other than to make proceeds of the Sales available to pay amounts due or that become due to the Consultant under the Consulting Agreement).

40. Subject to the ABL Agents' receipt of payment in full of their claims against the Debtors, all amounts owing by the Consultant to the Debtors under the Consulting Agreement shall be paid to the ABL Agents (or, after the repayment in full of all obligations arising under any DIP Credit Agreement and the ABL Credit Agreement, to the Second Lien Agent) as and when due.

41. No later than five days prior to the Final Hearing, the Consultant shall file a declaration disclosing connections to the Debtors, their creditors, and any other parties in interest in these chapter 11 cases.

42. Except with respect to the Consultant and the Consulting Agreement, nothing in this Interim Order shall be deemed: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens. Any payment made pursuant to this Interim Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

43. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

44. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

45. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

46. Cause exists to shorten the notice period set forth in Bankruptcy Rule 2002, to the extent possible.

47. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

48. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit the conduct of the Sales in accordance with the Store Closing Procedures, including but not limited to banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the Store Closings or Sales, (c) any other disputes related to the Store Closings or Sales, and (d) protect the Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests. No such parties or person shall take any action against the Debtors, the Consultant, the landlords, the Store Closings, or the Sales until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

Dated: 7/12, 2019
Wilmington, Delaware

UNITED STATES BANKRUPTCY JUDGE