## THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CHARMING CHARLIE HOLDINGS INC., *et al.*,[1] | ) Case No. 19-11534 (CSS) |
|  | ) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) **Obj. Deadline: Aug. 27, 2019 at 4:00 p.m. (ET)** |
|  | ) **Hearing Date: Sept. 12, 2019 at 1:00 p.m. (ET)** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE SALE OF CERTAIN INTELLECTUAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, <u>AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF</u>

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") in these jointly administered chapter 11 cases hereby submit this motion (this "<u>Motion</u>") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363 of title 11 of the Bankruptcy Code and rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (i) authorizing the sale (the "<u>Sale</u>") of certain intellectual property (the "<u>Intellectual Property</u>"), on an "as is, where is" basis, free and clear of all liens, claims, encumbrances, and interests, to the entity or entities (each, a "<u>Purchaser</u>") that submit the highest or otherwise best offer for the Intellectual Property as determined by the Debtors in their business judgment pursuant to the solicitation and auction

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Charming Charlie Canada LLC (0693); Charming Charlie Holdings Inc. (6139); Charming Charlie International LLC (5887); Charming Charlie LLC (0263); Charming Charlie Manhattan LLC (7408); Charming Charlie USA, Inc. (3973); and Poseidon Partners CMS, Inc. (3302). The location of the Debtors' headquarters is: 6001 Savoy Drive, Suite 600, Houston, Texas 77036.

process described below and (ii) granting related relief.  In support of this Motion, the Debtors

respectfully represent as follows:[2]

## JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over these chapter 11 cases, the Debtors, property of the Debtors' estates and this

matter under 28 U.S.C. § 1334, and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware dated as of February 29, 2012.  This is a core

proceeding under 28 U.S.C. § 157(b).

2.    Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final

judgment or order with respect to this Motion if it is determined that the Court, absent consent of

the parties, cannot enter final orders or judgments consistent with Article III of the United States

Constitution.

4.    The statutory and legal bases for the relief requested herein are sections 105(a)

and 363 of the Bankruptcy Code, along with Bankruptcy Rules 2002, 6004, and 9014.

---

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases are set forth in greater detail in the *Declaration of Alvaro Bellon, Chief Financial Officer of Charming Charlie Holdings Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on July 11, 2019 (the "Petition Date").  Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed thereto in the First Day Declaration.

## BACKGROUND

### I.    The Store Closing Sales.

5.    As further detailed in the First Day Declaration, the Debtors commenced these chapter 11 cases once they concluded that the alternative sources of financing on which they were working were no longer viable.  Accordingly, the Debtors determined that the best way to maximize value for the benefit of all interested parties was a prompt and orderly wind-down of their business through the implementation of store-closing sales (collectively, the "Store Closing Sales") and related liquidation initiatives.  As more fully discussed in the First Day Declaration, the conclusion to liquidate was reached following a lengthy process in which the Debtors considered and explored all reasonable strategic alternatives.

6.    Accordingly, on the Petition Date, the Debtors filed the *Debtors' Motion Seeking Entry of Interim and Final Orders (i) Authorizing the Debtors to Assume the Consulting Agreement, (ii) Approving Procedures for Store Closing Sales, (iii) Approving the Implementation of Customary Store Bonus Program and Payments to Non-Insiders Thereunder, and (iv) Granting Relief* [Docket No. 12] (the "GOB Motion"), which was approved by an interim order [Docket No. 87] on July 12, 2019.[3]  A hearing to consider the GOB Motion on a final basis is set for August 14, 2019, at 2:00 p.m. (ET).

### II.    The Sale of Intellectual Property.

7.    In connection with their retail operations, the Debtors have developed and utilized the Intellectual Property, which consists of trademarks, domain names including charmingcharlie.com, customer files and related transaction data, and social-media assets.

---

[3]    The Debtors and the Consultant thereafter entered into a First Amendment to Letter Agreement Governing Inventory Disposition.  [Docket No. 152].

8.      As referenced above and more fully described in the GOB Motion and First Day Declaration, the Debtors commenced the Store Closing Sales at all of their retail locations on or about July 12, 2019.  The Debtors ceased selling inventory on their websites shortly before the Petition Date and currently do not intend to restart online sales.  Nevertheless, the Debtors still maintain an online presence.

9.      On July 29, 2019, the Debtors entered into an agreement with Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank") to market and sell the Debtors' Intellectual Property assets.  Since that time, Hilco Streambank, with the assistance and oversight of the Debtors' management and advisors, has been actively engaged in the process of marketing the Debtors' Intellectual Property assets for sale.  After consultation with Hilco Streambank and their other advisors, the Debtors have determined that in order to maximize value, the Sale of their Intellectual Property needs to occur on an expedited timeline.

10.     Although the Debtors are no longer selling merchandise online, the Debtors believe that to maximize the value of the Debtors' Intellectual Property, it is in the best interest of the Debtors and parties in interest to sell the Intellectual Property while the Debtors still maintain an online presence.  By contrast, the Debtors and their advisors believe that if the Debtors were to conduct the Sale process while not maintaining the e-commerce site the Sale process would not realize the maximum value for that Intellectual Property.  Finally, it is anticipated that the Store Closing Sales will be completed on or before August 31, 2019, at which point many of the Debtors' employees will no longer be with the company.  It is, thus, urgent that the Debtors commence the Sale process with respect to the Intellectual Property immediately to ensure that name recognition in the marketplace remains and there are still employees available to assist with diligence requests from prospective purchasers.

11.     Accordingly, the Debtors believe it is prudent at this time and in the best interests of their estates and creditors to implement the sale procedures (the "Sale Procedures") summarized below and, accordingly, intend to employ the Sale Procedures prior to a hearing on this Motion.

### III.     The Proposed Sale Procedures.

12.     The Debtors propose to sell the Intellectual Property assets either in whole or part through one or more sale transactions pursuant to the terms of a purchase agreement (or agreements) to be negotiated by and between the Debtors and proposed purchaser(s) and executed upon completion of one or more auctions for the Intellectual Property (each, an "Auction").  In conjunction with the Auction(s), the Debtors propose to implement the Sale Procedures described below in an effort to maximize the realizable value of the Intellectual Property for the benefit of the Debtors' estates, creditors, and other interested parties.  The Sale Procedures contemplate an Auction process pursuant to which bids for the Intellectual Property will be subject to higher or better offers.  The Debtors are not seeking approval of Court-sanctioned bidding procedures in advance but, rather, propose conducting the Auction(s) in connection with the proposed Sale Procedures prior to the hearing on this Motion (the "Sale Hearing"), so as to derive maximum value for such assets.  The Debtors will present evidence with respect to the sale process and the winning bid(s) at the Sale Hearing.[4]  As described more fully below, only bidders who timely submit Qualified Bids (as defined below) may be eligible to participate in the Auction(s).

---

[4]     In the event that the Debtors do secure a binding stalking horse agreement at any time during the sale process, the Debtors will, in consultation with the Committee, promptly seek Court approval of appropriate bid protections and advise all interested parties of the terms of such stalking horse bid.

13.     Specifically, the Debtors will implement the following Sale Procedures, on substantially the terms set forth below, for the Sale of the Intellectual Property and conduct the Auction(s) in accordance therewith:

a)      **Bid Deadline.  September 5, 2019, at 5:00 p.m. (prevailing Eastern Time).**[5]

b)      Qualified Bid.  The Debtors will require a qualified bid (a "Qualified Bid") to meet the following requirements:  (i) enclose a proposed purchase agreement (the "Purchase Agreement") that specifically identifies the Intellectual Property proposed to be purchased, which may be all or a portion of the Intellectual Property, and the proposed consideration, and a blackline against the form purchase agreement annexed hereto as **Exhibit B**; (ii) confirm that the offer shall remain open and irrevocable until the closing of a Sale to the Successful Bidder or the Next Highest Bidder (as defined herein); (iii) be accompanied by a certified or bank check or wire transfer in an amount equal to 10 percent of the purchase price identified in the Purchase Agreement as a minimum good-faith deposit (the "Minimum Deposit"), which Minimum Deposit shall be used to fund a portion of the purchase price provided for in the bid; (iv) not be conditioned on obtaining financing or the outcome of any due diligence by the bidder; and (v) fully disclose the identity of each entity that will be bidding for the Intellectual Property or otherwise participating in connection with such bid, and the complete terms of any such participation.

c)      Auction(s).  If the Debtors receive more than one Qualified Bid for the Intellectual Property (or certain subset of the Intellectual Property), the Auction(s) with respect to the Sale will commence at the office of Debtors' counsel, Paul Hastings, 200 Park Avenue, New York, New York 10166, on September 9, 2019, at 10:00 a.m. (prevailing Eastern Time), or such later time and place as the Debtors may provide so long as such change is communicated reasonably in advance by the Debtors to all bidders, and other invitees.

d)      Auction Rules.  If one or more Auctions are held, the following rules for the Auction's conduct will be observed:  (i) only a bidder who has submitted a Qualified Bid by the Bid Deadline (a "Qualified Bidder") will be eligible to participate at the Auction; (ii) a minimum Qualified Bid amount for the Intellectual Property may be announced and/or posted prior to the Auction.  Such minimum Qualified Bid amounts may be established

---

[5]     Interested parties wishing to bid on the Intellectual Property should contact David Peress (dperess@hilcoglobal.com) and Richelle Kalnit (rkalnit@hilcoglobal.com) at Hilco Streambank.

based upon a variety of factors, including, but not limited to, the highest bids received prior to the Auction; (iii) at the Auction, Qualified Bidders will be permitted to increase their bids, and bidding at the Auction will continue until such time as the highest or otherwise best offer is determined in accordance with these Sale Procedures or until such Auction is adjourned by the Debtors. Reasonable notice of the time and place for the resumption of the Auction will be given to all Qualified Bidders and counsel to any statutory committee appointed in these chapter 11 cases; (iv) immediately prior to concluding the Auction, the Debtors shall (a) review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the Sale process and the best interests of the Debtors' estates and creditors; (b) determine and identify the highest or otherwise best Qualified Bid (the "<u>Successful Bid</u>") and the Qualified Bidder submitting such bid (the "<u>Successful Bidder</u>"); (c) determine and identify the next highest or otherwise best Qualified Bid after the Successful Bid (the "<u>Next Highest Bid</u>") and the Qualified Bidder submitting such bid (the "<u>Next Highest Bidder</u>"); and (d) have the right to reject any and all bids; and (e) within one business day of the completion of the Auction, the Successful Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

e)  <u>Acceptance of Successful Bid</u>. If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid on the record at the Auction and (ii) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Court of the Successful Bid and the entry of an Order approving the Sale and such Successful Bid.

f)  <u>Notice of Successful Bid(s)</u>. As soon as reasonably practicable following the conclusion of the Auction(s), the Debtors shall file a Notice of Successful Bid(s). The Notice of Successful Bid(s) shall identify the identity of the Successful Bidder(s), the amount of the Successful Bid(s), and shall include a substantially final version of the Purchase Agreement.

g)  **<u>Sale Hearing</u>. September 12, 2019, at 2:00 p.m. (prevailing Eastern Time).**

h)  <u>Reservation of Rights</u>. The Debtors reserve the right to seek approval of the Sale of portions of the Intellectual Property through separate Purchase Agreements with different purchasers in the event that the combination of such Sales is determined by the Debtors to obtain the highest value for the Intellectual Property. The Debtors further reserve the right as they may reasonably determine to be in the best interests of their estates to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best

proposal, (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Sale Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) remove some or all of the Intellectual Property from the Auction(s); (vi) enter into one or more stalking horse agreements; (vii) waive terms and conditions set forth in these Sale Procedures with respect to all potential bidders; (viii) impose additional terms and conditions with respect to all potential bidders; (ix) extend the deadlines set forth herein; (x) adjourn or cancel the Auction(s) and/or Sale Hearing in open court without further notice; and (xi) modify the Sale Procedures as they may determine to be in the best interests of their estates or to withdraw this Motion at any time with or without prejudice.

14.     The Debtors believe that the process contemplated hereby will foster a competitive bidding atmosphere that will generate significant value for their estates.

## IV.     No Consumer Privacy Ombudsman Required.

15.     A consumer privacy ombudsman is not required because the Debtors' customers were on explicit notice that their data could be transferred.[6]

<u>**RELIEF REQUESTED**</u>

16.     By this Motion, the Debtors seek entry of an order (i) authorizing the Sale of the Debtors' Intellectual Property free and clear of liens, claims, encumbrances, and interests, pursuant to one or more Purchase Agreements executed by and between the Debtors and the Purchaser(s) and (ii) granting related relief.

---

[6]     The Debtors' privacy policy provides in pertinent part:

> Business Transactions:  As we develop our business, we might sell, buy, restructure or reorganize businesses or assets.  In the event of a merger, consolidation, sale, liquidation or transfer of assets, Charming Charlie may, in its sole and absolute discretion, transfer, sell or assign information collected, including without limitation, information you have provided to us and information we have automatically collected about you, to one or more affiliated or unaffiliated third parties.

*See* https://www.charmingcharlie.com/privacy-policy.html#use-of-personal.

## <u>BASIS FOR RELIEF REQUESTED</u>

17.     For the reasons explained below and throughout this Motion, the Debtors'
decision to sell the Intellectual Property is a sound exercise of the Debtors' business judgment.
Indeed, the Debtors are confident that the aforementioned process will generate the highest value
for the Intellectual Property because (a) the Debtors and Hilco Streambank are actively
marketing, and will continue to market, the Intellectual Property to all known and likely potential
purchasers, (b) the Auction(s) will foster a competitive bidding process through which the
highest or otherwise best offer will be generated, and (c) the Sale Procedures offer maximum
flexibility and security to the Debtors in conjunction with selling the Intellectual Property in an
expeditious and value-maximizing manner.

## I.    Sales of the Intellectual Property Should Be Approved.

18.     Section 363(b)(1) of the Bankruptcy Code provides:  "The trustee, after notice
and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of
the estate." Section 105(a) of the Bankruptcy Code provides:  "The Court may issue any order,
process, or judgment that is necessary or appropriate to carry out the provisions of this title."
Bankruptcy Rule 6004(f)(1) states that, "all sales not in the ordinary course of business may be
by private sale or by public auction."  With respect to the notice required in connection with a
sale, Bankruptcy Rule 2002(c)(1) states:

> the notice of a proposed use, sale or lease of property . . . shall include the
> time and place of any public sale, the terms and conditions of any private
> sale and the deadline for filing objections.  The notice of a proposed use,
> sale or lease of property, including real estate, is sufficient if it generally
> describes the property.

19.     To approve the use, sale, or lease of property outside the ordinary course of
business, the Court must find "some articulated business justification" for the proposed action.
*See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145–47 (3d Cir. 1986) (implicitly adopting

the "articulated business justification" and good-faith tests of *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies); Titusville Country Club v. PennBank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc*., 77 B.R. 15, 19 (Bankr. E.D. Pa. 1987).

20.     Generally, courts have applied four factors in determining whether a sale of a debtor's assets should be approved:  (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided.  *See Lionel*, 722 F.2d at 1071 (setting forth the "sound business purpose" test); *Abbotts Dairies*, 788 F.2d at 145–57 (implicitly adopting the articulated business justification test and adding the "good faith" requirement); *Del. & Hudson Ry*., 124 B.R. at 176 ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").[7]

21.     Here, the Sale of the Intellectual Property meets these requirements and, accordingly, the Debtors submit it should be approved.  Moreover, it is essential that the

---

[7]     Even if the proposed Sale is deemed to be private, rather than public, this fundamental analysis does not change. *See, e.g., In re Ancor Exploration Co.,* 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)."). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property." *In re WPRV-TV, Inc.,* 143 B.R. 315, 319 (D.P.R. 1991), *vacated on other grounds,* 165 B.R. 1 (D.P.R. 1992); *accord In re Canyon Partnership,* 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

Intellectual Property be sold promptly in order to avoid deterioration in its value and the incurrence of additional administrative expenses.  The Debtors submit that implementation of the Sale Procedures and Auction process as outlined herein will generate maximum interest in the Intellectual Property, thereby yielding the highest or otherwise best bids for such assets. Accordingly, the Debtors submit that the proposed Sale will be the culmination of a thorough and exhaustive marketing process, and that the decision to sell the Intellectual Property to the Purchaser(s) is adequately informed, reasonable, and in the best interests of the Debtors, their estates, and other stakeholders.

### A.    The Sale Process Is a Sound Exercise of the Debtors' Business Judgment.

22.    There is more than ample business justification to sell the Intellectual Property as set forth herein, and as such, an order granting the relief requested is a matter within the discretion of the Court and would be consistent with the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a).  Subject to the Purchaser's willingness to provide fair and reasonable consideration, the Debtors' estates and creditors will benefit from the approval of the Sale without the added costs in terms of time and expenses associated with a Court-approved sale process.

23.    Due to the diminishing inventory and the cost of maintaining the e-commerce site, as well as the timeline contemplated for the Store Closing Sales, the Debtors will be forced to take down their e-commerce site in the near term, resulting in a significant loss of value to the Debtors' estates.  Prior to such time, it is imperative that interested parties have an opportunity to evaluate the Intellectual Property while it is still viewable because a key component of the value to be derived at the Auction will necessarily reflect the assessment of these potential purchasers of the go-forward utility of the Debtors' Intellectual Property.  The actual transfer of title to certain Intellectual Property such as trademarks and domain names, as well as the transmission

of customer lists and related data, will occur upon Court approval of the Sale, and the value of the Intellectual Property will be substantially diminished if the Purchaser(s) are unable to take possession of the Intellectual Property until after it is no longer in commercial use.  Thus, the Debtors believe that the proposed Sale process is in the best interests of the Debtors, their estates, and creditors and should go forward as soon as is practicable.

24.    Simply put, in the Debtors' business judgment, selling the Intellectual Property through the aforementioned Sale process is the best option for maximizing the overall value of these assets for the benefit of all stakeholders.

**B.    The Proposed Sale Procedures Are Fair and Reasonable.**

25.    The Sale Procedures are designed to maximize the value received for the Intellectual Property and will allow for a timely Auction process while providing bidders and consultants with ample time and information to submit a timely Qualified Bid.  The Sale Procedures are designed to ensure that the Intellectual Property will be sold for the highest or otherwise best possible purchase price under the circumstances of these chapter 11 cases.  The Debtors shall continue to subject the value of the Intellectual Property to market testing, and by permitting prospective purchasers to bid on the Intellectual Property, the Debtors shall ensure that the ultimate Sale price is an accurate reflection of the Intellectual Property's true value.  Similar procedures, pursuant to which liquidating chapter 11 debtors solicit bids and implement an auction process without first seeking court approval thereof, have been implemented in other chapter 11 cases in this district and others.  *See e.g. In re The Wet Seal LLC*, Case No. 17-10229 (CSS); *In re Anchor Blue Holding Corp.*, Case No. 11-10110 (PJW) (Bankr. D. Del. 2010); In *re Kid Brands, Inc.*, Case No. 14-22582 (Bankr. D.N.J. 2014).  Accordingly, the Debtors and all parties in interest can be assured that the consideration received for the Intellectual Property will be fair and reasonable, and the third prong of the *Abbotts Dairies* standard is satisfied.  As

discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also satisfied in this instance.

26.     The Debtors will analyze the Qualified Bids and pursue the Sale at the Sale Hearing only if the Debtors conclude that such Sale will maximize the value of the Intellectual Property.  As explained above, the Debtors and Hilco Streambank will market the Intellectual Property in an appropriate and cost-efficient manner given the value of the Intellectual Property and the associated exigencies.  In light of the marketing efforts and the nature of the assets, the Debtors believe that the Sale will provide fair and reasonable value for the Intellectual Property.

**C.     The Sale Is Proposed in Good Faith.**

27.     The Sale is being proposed in good faith.  The Sale will be the product of good-faith, arm's-length negotiations between the Debtors, on the one hand, and the Purchaser(s), on the other.  The Debtors believe that the Sale of the Intellectual Property to the Purchaser(s) will not be the product of collusion or bad faith.  No evidence exists to suggest that the Sale will be anything but the product of arm's-length negotiations between the Debtors and the Purchaser(s), conducted under the purview of one or more Auction(s).

28.     The Purchase Agreement(s) ultimately executed by and between the Debtors and the Purchaser(s) and subject to Court approval will be the culmination of a fair and open solicitation and negotiation process.  The Sale Procedures are designed to ensure that no party is able to exert undue influence over the process.  Under the circumstances, the Debtors intend to ask the Court to find that the Successful Bidder (or Next Highest Bidder) be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good-faith purchaser. Furthermore, the Sale Procedures are designed to prevent the Debtors or the Successful Bidder (or Next Highest Bidder) from engaging in any conduct that would cause or permit the Purchase

Agreement(s), or the Sale of the Intellectual Property to the Successful Bidder (or Next Highest Bidder), to be avoided under section 363(n) of the Bankruptcy Code.

> **D.    Adequate and Reasonable Notice of the Sale Will Be Provided.**

29.    The Debtors will provide adequate notice of this Motion to parties in interest, as required by the applicable procedural rules.  *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."); *see also Del. & Hudson Ry*., 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

30.    Numerous potential Qualified Bidders have already received information regarding the Intellectual Property Sale process from Hilco Streambank.  In addition, the Debtors will serve this Motion on all parties that have expressed interest, or the Debtors believe may have an interest, in purchasing the Intellectual Property.  Those parties will be alerted to the Auction, have an opportunity to participate in the Auction, and can submit other or additional offers prior to the Bid Deadline.  Consistent with their fiduciary duties to their estates, the Debtors will consider all such offers.

31.    To summarize, in the Debtors' informed business judgment, the Debtors will continue to market the Intellectual Property, conduct one or more Auctions prior to the Sale Hearing with respect thereto, and complete the disposition of the Intellectual Property in a manner best-tailored to generate value for the Debtors' estates while simultaneously limiting the deterioration in value of the Intellectual Property and the Debtors' exposure to burdensome and unnecessary administrative expenses.  For these reasons, the Debtors' submit that the Court

should approve the sale of the Intellectual Property to the Purchaser(s) selected by the Debtors pursuant to the Sale Procedures.

## II.    The Sales Satisfies the Requirements of Section 363(f) of the Bankruptcy Code.

32.    Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims, or interests in such property if:  (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim, or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a *bona fide* dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).

33.    Because the Debtors expect that they will satisfy the second and fifth of these requirements, if not others as well, approving the sale of the Intellectual Property free and clear of all adverse interests is warranted.  Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See, e.g., In re Trans World Airlines, Inc.*, 2001 WL 1820325 at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

## Waiver of Stay under Bankruptcy Rule 6004(h)

34.    Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth throughout this Motion, an inability to

sell the Intellectual Property while the Debtors' ecommerce site is visible would impair the Debtors' ability to maximize the value received for their Intellectual Property, to the detriment of the Debtors, their creditors, and estates.

35.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## Notice

36.     The Debtors will provide notice of this motion to:  (a) the office of the United States Trustee for the District of Delaware; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to the DIP Agents and the Prepetition ABL Agents; (d) counsel to the Prepetition Term Loan Agent and the Prepetition Vender Financing Agent; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for all states in which the Debtors conduct business; and (i) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

Dated: August 13, 2019
      Wilmington, Delaware

/s/ *Sally E. Veghte*

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193

- and -

Matthew M. Murphy (admitted *pro hac vice*)
Nathan S. Gimpel (admitted *pro hac vice*)
Matthew Smart (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

Todd M. Schwartz (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
1117 South California Avenue
Palo Alto, California 94304
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

*Proposed Co-Counsel to the Debtors and Debtors in Possession*