# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHARMING CHARLIE LLC, *et al.*,[1] | ) | Case No. 19-11534 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Re: Docket Nos. 15, 16, & 86 |

## FINAL ORDER (I) APPROVING THE DEBTORS' POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS' CONTINUED USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS, (V) MODIFYING AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF

Upon the motion, dated July 11, 2019 (the "DIP Motion") of Charming Charlie LLC (the "Company") and Charming Charlie USA, Inc. ("CC USA" and together with the Company, the "Borrowers") and Charming Charlie Holdings, Inc. (the "Guarantor"), each as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this "Final Order") pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Charming Charlie Canada LLC (0693); Charming Charlie Holdings Inc. (6139); Charming Charlie International LLC (5887); Charming Charlie LLC (0263); Charming Charlie Manhattan LLC (7408); Charming Charlie USA, Inc. (3973); and Poseidon Partners CMS, Inc. (3302). The location of the Debtors' headquarters and service address is: 6001 Savoy Drive, Ste. 600, Houston, Texas 77036.

United States Bankruptcy Court for the District of Delaware (the "Local Rules") and unless otherwise ordered by this Court, *inter alia*:

(i)        authorizing the Debtors to obtain senior secured, superpriority postpetition financing (the "DIP Facility"), consisting of a senior secured superpriority revolving credit facility in an aggregate principal amount of $13,000,000 pursuant to the terms and conditions of that certain *Debtor-In-Possession Credit Agreement* (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Agreement"), by and among the Debtors, White Oak Commercial Finance, LLC and Second Avenue Capital Partners, LLC, each as a Co-Collateral Agent (collectively, in such capacity, the "DIP Agents") and as a lender under the DIP Facility (collectively, in such capacity, the "DIP Lenders"), substantially in the form of **Exhibit B**, attached to the DIP Motion;

(ii)        authorizing the Debtors to execute and deliver the DIP Agreement and any other agreements, instruments, pledge agreements, guarantees, control agreements  and other Loan Documents (as defined in the DIP Agreement) and documents related thereto (including, without limitation, any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the DIP Agreement, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)        granting to the DIP Agents, for the benefit of themselves and the applicable DIP Lenders and other "Secured Parties" (as defined in the DIP Agreement) on account of the DIP Facility and all obligations owing thereunder and under, or secured by, the DIP Documents (collectively, and including all "Obligations" as described in the DIP Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in the Cases and any

Successor Cases (as defined herein), which superpriority administrative expense claims shall be subject to the priorities set forth herein;

(iv)        granting to each of the DIP Agents, for their benefit and the benefit of the DIP Lenders and each other applicable Secured Party (as defined in the DIP Agreement) under the applicable DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), which liens shall be subject to the priorities set forth herein;

(v)        authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable, including, letter of credit fees (including issuance and other related charges), commitment fees, success fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, administrative agent's fees, unused facility fees, and the reasonable and documented fees and disbursements of the DIP Agents' attorneys, advisors, accountants, and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(vi)        authorizing the Debtors to use the Prepetition Collateral (as defined herein), including the Cash Collateral of the Prepetition Credit Parties under the Prepetition Documents (each as defined herein), and providing adequate protection to the Prepetition Credit Parties as set forth herein for any diminution in value of their respective interests in the Prepetition Collateral, including Cash Collateral, resulting from the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, and the priming of their respective interests in the Prepetition Collateral, including Cash Collateral, including by the Carve Out (collectively, and solely to the extent of such diminution in value, "Diminution in Value");

(vii)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and the Interim Order (as defined below) and this Final Order; and

(viii)     scheduling a final hearing (the "Final Hearing") within thirty (30) days of the Petition Date to consider the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Alvaro Bellon, Chief Financial Officer of Charming Charlie Holdings, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), the DIP Documents, and the evidence submitted and argument made by the Debtors at the interim hearing held on July 12, 2019 (the "Interim Hearing") and at the Final Hearing held on August 14, 2019; and the Court having entered an Interim Order (the "Interim Order") granting the relief requested in the DIP Motion on an interim basis on July 12, 2019; and notice of the Interim Hearing and Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing and Final Hearing having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors and their estate, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

4

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

A. **Petition Date**. On July 11, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

B. **Debtors in Possession**. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C. **Jurisdiction and Venue**. This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. **Committee Formation**. The United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee") on July 19, 2019.

E. **Notice**. Notice of the DIP Motion, the Interim Hearing and the Final Hearing have been provided in accordance with the Interim Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the DIP Motion with

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

respect to the relief requested at the Interim Hearing or the Final Hearing or the entry of this Final Order shall be required.

   F. **Debtors' Stipulations**. After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 42 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xv) below are referred to herein, collectively, as the "Debtors' Stipulations"):

   (i) *Prepetition Revolving Loan Facility*.  Prior to the Petition Date, pursuant to that certain Credit Agreement dated as of February 28, 2019 (as amended, restated, supplemented or otherwise modified from time to time, including the amendments contemplated hereby, the "Prepetition Revolving Loan Credit Agreement" and collectively with the Loan Documents (as defined in the Prepetition Revolving Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Revolving Loan Documents"), by and among (a) the Company and CC USA (collectively, the "Prepetition Revolving Loan Borrower"), (b) the Guarantors (as defined in the Prepetition Revolving Loan Credit Agreement) party thereto, (c) Second Avenue Capital Partners, LLC, as a co-collateral agent and a lender, and White Oak Commercial Finance, LLC, as the administrative agent (together with Second Avenue Capital Partners, LLC, the "Prepetition Revolving Loan Agents"), a co-collateral agent and a lender, (d) the lenders party thereto (the "Prepetition Revolving Loan Lenders," and collectively with the Prepetition Revolving Loan Agents and the other "Secured Parties" under and as defined in the Prepetition Revolving Loan Credit Agreement, the "Prepetition Revolving Loan Secured Parties"), the Prepetition Revolving

Loan Lenders provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, the Prepetition Revolving Loan Borrower pursuant to the Prepetition Revolving Loan Documents (the "Prepetition Revolving Loan Facility").

(ii)    *Prepetition Revolving Loan Obligations.* The Prepetition Revolving Loan Facility provided the Prepetition Revolving Loan Borrower with, among other things, up to $35,000,000 aggregate principal amount of Loans (as defined in the Prepetition Revolving Loan Credit Agreement). As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Revolving Loan Facility was approximately $9,500,000 (collectively, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses and disbursements (including attorneys' fees, consultants' fees, accountants' fees, auditor fees, appraisers' fees, and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Revolving Loan Borrower's obligations pursuant to, or secured by, the Prepetition Revolving Loan Documents, including all "Obligations" as defined in the Prepetition Revolving Loan Credit Agreement, and all interest, fees (including amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Revolving Loan Obligations"). As of the date of this Final Order, the Prepetition Revolving Loan Obligations have been converted into DIP Obligations (as further described below) and paid in full.

(iii)    *Prepetition Revolving Loan Liens and Prepetition Collateral*.  As more fully set forth in the Prepetition Revolving Loan Documents and the DIP Motion, prior to the Petition Date, the Prepetition Revolving Loan Borrower granted to the Prepetition Revolving Loan Agents, for the benefit of themselves and the Prepetition Revolving Loan Lenders, a first priority security interest in and continuing lien on (the "Prepetition Revolving Loan Liens") substantially all of its assets and property and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Collateral"), subject only to the Prepetition Revolving Loan Permitted Prior Liens (as defined herein).

(iv)    *Prepetition Term Loan Facility*.  Prior to the Petition Date, pursuant to that certain Credit Agreement dated as of April 24, 2018 (as amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Credit Agreement," and collectively with the Loan Documents (as defined in the Prepetition Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Documents"), among (a) the Company (the "Prepetition Term Loan Borrower"), (b) the Guarantors (as defined in the Prepetition Term Loan Credit Agreement) party thereto, (c) Wilmington Trust, National Association, as administrative agent (the "Prepetition Term Loan Agent"), and (d) the lenders party thereto (the "Prepetition Term Loan Lenders," and collectively with the Prepetition Term Loan Agent, the "Prepetition Term Loan Secured Parties"), the Prepetition Term Loan Lenders provided term loans to the Prepetition Term Loan Borrower (the "Prepetition Term Loan Facility").

(v)     *Prepetition Term Loan Obligations.*  The Prepetition Term Loan Facility provided the Prepetition Term Loan Borrower with term loans in the aggregate principal amount of $55,000,000.  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Loan Facility was $55,000,000 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, consultants' fees, accountants' fees, auditor fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements), indemnification obligations, premium, guarantee obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Term Loan Borrower's obligations pursuant to the Prepetition Term Loan Documents, including all "Obligations" as defined in the Prepetition Term Loan Credit Agreement, and all interest, fees (including amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Term Loan Obligations").

(vi)     *Prepetition Term Loan Liens.*  As more fully set forth in the Prepetition Term Loan Documents and the DIP Motion, prior to the Petition Date, the Prepetition Term Loan Borrower granted to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, a third priority security interest in and continuing lien on (the "Prepetition Term Loan Liens") the Prepetition Collateral, subject and junior to the liens of the Prepetition Revolving Loan Agents, the Prepetition Vendor Program Loan Agent and the Prepetition Term Loan Permitted Prior Liens (as defined herein).

(vii)     *Prepetition Vendor Program Credit Agreement.*  Prior to the Petition Date, pursuant to that certain Vendor Payment Financing Credit and Guarantee Agreement, dated as of April 24, 2018 (as amended, restated, supplemented, waived or otherwise modified from time

9

to time, the "<u>Prepetition Vendor Program Credit Agreement</u>," and collectively with the Loan Documents (as defined in the Prepetition Vendor Program Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "<u>Prepetition Vendor Program Loan Documents</u>", and together with the Prepetition Revolving Loan Documents and the Prepetition Term Loan Documents, the "<u>Prepetition Documents</u>"), among (a) the Company (the "<u>Prepetition Vendor Program Borrower</u>"), (b) the Vendor Program Guarantors (as defined in the Prepetition Vendor Program Credit Agreement), (c) Wilmington Trust, National Association (the "<u>Prepetition Vendor Program Loan Agent</u>," and together with the Prepetition Revolving Loan Agents and the Prepetition Term Loan Agent, the "<u>Prepetition Agents</u>"), and (c) the lenders party thereto (the "<u>Prepetition Vendor Program Lenders</u>," and collectively with the Prepetition Vendor Program Loan Agent, the "<u>Prepetition Vendor Program Loan Secured Parties</u>," and together with the Prepetition Revolving Loan Secured Parties and the Prepetition Term Loan Secured Parties, the "<u>Prepetition Secured Parties</u>"), the Prepetition Vendor Program Lenders provided certain loans to the Prepetition Vendor Program Borrower (the "<u>Prepetition Vendor Program Facility</u>," and together with the Prepetition Revolving Loan Facility and the Prepetition Term Loan Facility, the "<u>Prepetition Secured Facilities</u>").

(viii)   *Prepetition Vendor Program Loan Obligations*.  The Prepetition Vendor Program Facility provided the Prepetition Vendor Program Borrower with loans in the aggregate principal amount of $10,000,000.  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Vendor Program Facility was $10,000,000 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, consultants' fees, accountants' fees, auditor fees, appraisers' fees, and financial

advisors' fees and related expenses and disbursements), indemnification obligations, premium, guarantee obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Vendor Program Borrower's obligations pursuant to the Prepetition Vendor Program Loan Documents, including all "Obligations" as defined in the Prepetition Vendor Program Credit Agreement, and all interest, fees (including amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Vendor Program Loan Obligations," and together with the Prepetition Revolving Loan Obligations and the Prepetition Term Loan Obligations, the "Prepetition Secured Obligations").

(ix)   *Prepetition Vendor Program Liens*.   As more fully set forth in the Prepetition Vendor Program Loan Documents and the DIP Motion, prior to the Petition Date, the Prepetition Vendor Program Borrower granted to the Prepetition Vendor Program Loan Agent, for the benefit of itself and the Prepetition Vendor Program Lenders, a second priority security interest in and continuing lien on (the "Prepetition Vendor Program Liens," and together with the Prepetition Revolving Loan Liens and the Prepetition Term Loan Liens, the "Prepetition Liens") the Prepetition Collateral, subject and junior to the liens of the Prepetition Revolving Loan Agents and the Prepetition Vendor Program Permitted Prior Liens (as defined herein).

(x)   *Priority of Prepetition Liens; Intercreditor Agreements*.   The Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, and the Prepetition Vendor Program Loan Agent are parties to that certain Intercreditor Agreement dated as of February 28, 2019 (as amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "Intercreditor Agreement"), which governs the respective rights, interests,

obligations, priorities, and positions of the Prepetition Secured Parties with respect to the assets and properties of the Debtors. The Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent are parties to that certain Intercreditor Agreement dated as of April 24, 2018 (as amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "Term Vendor Intercreditor Agreement"), which governs the respective rights, interests, obligations, priorities, and positions of the Prepetition Term Loan Lenders and Prepetition Vendor Program Lenders with respect to the assets and properties of the Debtors. The Debtors, as borrowers and guarantors under the Prepetition Documents, acknowledged and agreed to the Intercreditor Agreement and the Term Vendor Intercreditor Agreement.

(xi)    *Validity, Perfection, and Priority of Prepetition Revolving Loan Liens and Prepetition Revolving Loan Obligations.* The Debtors acknowledge and represent that as of the Petition Date (a) the Prepetition Revolving Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Revolving Loan Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Revolving Loan Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Revolving Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Revolving Loan Liens as of the Petition Date, the "Prepetition Revolving Loan Permitted Prior Liens"); (c) the Prepetition Revolving Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Revolving Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Revolving Loan Liens or Prepetition Revolving

Loan Obligations exist, and no portion of the Prepetition Revolving Loan Liens or Prepetition Revolving Loan Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Revolving Loan Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Revolving Loan Facility; (f) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, including without limitation, under any theory of "equitable subordination", "lender liability", and/or "deepening insolvency", against any of the Prepetition Revolving Loan Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to administration of the business relationship among the Debtors and the Prepetition Revolving Loan Secured Parties; (g) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Revolving Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Revolving Loan Obligations; and (h) the Prepetition Revolving Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(xii)    *Validity, Perfection, and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations.*  The Debtors further acknowledge and represent that, as

PHIL1 8160855v.1

of the Petition Date, the Prepetition Term Loan Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject and junior to (1) the Prepetition Revolving Loan Liens, (2) the Prepetition Vendor Program Liens, and (3) certain liens otherwise permitted by the Prepetition Term Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Term Loan Liens as of the Petition Date, the "Prepetition Term Loan Permitted Prior Liens").  The Debtors further acknowledge and agree that as of the Petition Date (a) the Prepetition Term Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Term Loan Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Term Loan Documents; (c) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Loan Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Term Loan Facility; (e) the Debtors and their estates have no claims, objections,

14

challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, including without limitation, under any theory of "equitable subordination", "lender liability", and/or "deepening insolvency", against any of the Prepetition Term Loan Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to administration of the business relationship among the Debtors and the Prepetition Term Loan Secured Parties; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Loan Obligations; and (g) the Prepetition Term Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(xiii) *Validity, Perfection, and Priority of Prepetition Vendor Program Liens and Prepetition Vendor Program Loan Obligations.* The Debtors further acknowledge and represent that, as of the Petition Date, the Prepetition Vendor Program Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject and junior to (1) the Prepetition Revolving Loan Liens, (2) [reserved], and (3) certain liens otherwise permitted by the Prepetition Vendor Program Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Vendor Program Liens as of the Petition Date, the "Prepetition Vendor Program Permitted Prior Liens" and, together with the Prepetition Revolving Loan Permitted Prior Liens and the Prepetition Term Loan Permitted

Prior Liens, the "Permitted Prior Liens").[3]  The Debtors further acknowledge and agree that as of the Petition Date (a) the Prepetition Vendor Program Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Vendor Program Loan Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Vendor Program Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Vendor Program Loan Documents; (c) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Vendor Program Liens or Prepetition Vendor Program Loan Obligations exist, and no portion of the Prepetition Vendor Program Liens or Prepetition Vendor Program Loan Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Vendor Program Loan Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Vendor Program Facility; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law

---

[3]        For the avoidance of doubt, as used in this Final Order, no reference to the Prepetition Revolving Loan Permitted Prior Liens, the Prepetition Term Loan Permitted Prior Liens, the Prepetition Vendor Program Permitted Prior Liens, or the Permitted Prior Liens shall refer to or include the Prepetition Revolving Loan Liens, the Prepetition Term Loan Liens, or the Prepetition Vendor Program Liens.

equivalents or actions for recovery or disgorgement, including without limitation, under any theory of "equitable subordination", "lender liability", and/or "deepening insolvency", against any of the Prepetition Vendor Program Loan Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to administration of the business relationship among the Debtors and the Prepetition Vendor Program Loan Secured Parties; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Vendor Program Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Vendor Program Loan Obligations; and (g) the Prepetition Vendor Program Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(xiv)    *No Control.*    None of the DIP Agents, DIP Lenders or Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are managed or conducted, or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Order, the DIP Facility, the DIP Documents, the Prepetition Revolving Loan Secured Facility, the Prepetition Revolving Loan Documents, this Final Order, the Prepetition Term Loan Secured Facility, the Prepetition Term Loan Documents, the Prepetition Vendor Program Loan Documents and/or Prepetition Vendor Program Facility.

(xv)    *Default by the Debtors.* The Debtors have been and are in default of their obligations under the Prepetition Revolving Loan Documents and, as of the Petition Date, interest was accruing on the Prepetition Revolving Loan Obligations at the default rate.  In

17

addition, since June 4, 2019, the Debtors have been and are in default of their obligations under the Prepetition Vendor Program Loan Facility and Prepetition Term Loan Facility.

G.      **Continuation of Liens; Permitted Prior Liens**.  The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens, and the Prepetition Collateral and DIP Collateral are and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facility and the Prepetition Secured Facilities.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agents, the Prepetition Secured Parties, or the Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests.  Any right or alleged right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the Prepetition Liens and the DIP Liens.

H.      **Cash Collateral**.  All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

I.      **Findings Regarding Corporate Authority.**  The Debtors have all requisite corporate power and authority to execute and deliver the DIP Documents to which they are a party and to perform their obligations thereunder.

J.      **Intercreditor Agreement**.  Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreement, the Term Vendor Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Documents

(i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under this Final Order or otherwise and the modification of the automatic stay), and (iii) shall not be deemed to be amended, altered, or modified by the terms of this Final Order or the DIP Documents, unless expressly set forth herein or therein.

K.     **Findings Regarding Postpetition Financing and Use of Cash Collateral.**

(i)     *Request for Postpetition Financing.* As set forth in the Interim Order, the Debtors were entitled to borrow up to $13,000,000 on a revolving basis under the DIP Facility (the "DIP Financing"). During the period from the entry of the Interim Order to the entry of this Final Order (the "Interim Period"), the Debtors utilized the DIP Facility to, among other things, finance their operations. As of the date of this Final Order, the DIP Obligations have been paid in full and the Debtors do not anticipate any further need for the DIP Facility. Accordingly, the Debtors now seek (a) final approval of the DIP Facility on the terms described herein and in the DIP Documents and (b) authority to use Cash Collateral on the terms described herein to administer their Cases and fund their operations. Notice of the Final Hearing and this Final Order was provided in accordance with the Interim Order.

(ii)     *Priming of the Prepetition Liens.* The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, enabled the Debtors to obtain the DIP Facility and continue to operate their businesses for the benefit of their estates and creditors during the Interim Period. The Prepetition Secured Parties are each entitled to receive adequate protection as

set forth in this Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors had an immediate and critical need to use Cash Collateral and obtain credit pursuant to the DIP Facility during the Interim Period, and continue to have an immediate and critical need to use Cash Collateral, in order to, among other things, enable the orderly continuation of their operations and to administer and preserve the value of their estates. The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations required the availability of working capital from the DIP Facility and the use of Cash Collateral during the Interim Period, and continues to require the availability of working capital from the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest. The Debtors did not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business during the Interim Period without the DIP Facility and the authorized use of Cash Collateral and, following the entry of this Final Order, the Debtors will not have sufficient available sources of working capital and financing to administer their estates without the continued authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.* Given their financial condition, financing arrangements, and capital structure, the Debtors were unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtors were unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors also were unable to obtain: (a)

20

unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. As described in the First Day Declaration, post-petition financing on better terms was not available without granting the DIP Agents, for the benefit of themselves and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof, including being subject to the Carve Out; (2) superpriority claims and liens, subject to and subordinate to the Carve Out; and (3) the other protections set forth in this Final Order.

(v)     *Continued Use of Cash Collateral.*    As a condition to the authorization to continue to use Cash Collateral, the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders require, and the Debtors have agreed, that Cash Collateral shall be used, in each case in a manner consistent with the terms and conditions of this Final Order and in accordance with the budget (as the same may be modified from time to time consistent with the terms of this Final Order, and as set forth in paragraphs 19 and 20 hereof, the "Budget"),[4] solely for: (a) working capital, (b) other general corporate purposes of the Debtors; (c) permitted payment of costs of administration of the Cases, including professional fees; (d) payment of such other prepetition obligations as consented to by the DIP Agents and the Prepetition Agents, each in its sole discretion, and as approved by the Court; (e) payment of interest, fees, expenses, and other amounts (including legal and other professionals' fees and expenses of the DIP Agents and the Prepetition Agents) owed under the DIP Documents and the Prepetition Documents; (f) payment

---

[4]     A copy of the Budget as of entry of this Final Order is attached hereto as **Schedule 1**.

PHIL1 8160855v.1

of certain adequate protection amounts to the Prepetition Secured Parties, as set forth in paragraphs 16-17 hereof; (g) payment of obligations arising from or related to the Carve Out, and making disbursements therefrom; and (h) such other uses permitted by this Final Order and set forth in the Budget.

(vi)    *Application of Proceeds of Collateral*.  As a condition to the authorization to continue to use Cash Collateral, the Debtors, the DIP Agents, the DIP Lenders and the Prepetition Secured Parties have agreed that as of and commencing on the date of entry of the Interim Order and after payment in full of the Prepetition Revolving Loan Obligations and the DIP Obligations, the Debtors shall apply the proceeds of Prepetition Collateral and DIP Collateral in accordance with this Final Order and the Budget.  To the extent any Prepetition Collateral or DIP Collateral is sold after the date of this Final Order, after the indefeasible payment in full in cash of the Prepetition Revolving Loan Obligations and the DIP Obligations, the proceeds shall be paid to the Prepetition Vendor Program Loan Agent for application to the Prepetition Vendor Program Loan Obligations, to the extent set forth in the Budget.

(vii)    *Roll-up of Prepetition Revolving Loan Obligations into DIP Obligations*.  All of the Prepetition Revolving Loan Obligations have been converted into DIP Obligations (the "DIP Roll-Up Loans") on a final basis and paid in full.

L.    **Adequate Protection**.  The Prepetition Revolving Loan Agents, for the benefit of themselves and the Prepetition Revolving Loan Secured Parties, the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Secured Parties, and the Prepetition Vendor Program Loan Agent, for the benefit of itself and the Prepetition Vendor Program Lenders, are each entitled to receive adequate protection as set forth herein to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral.  Pursuant to

22

sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection: (i) the Prepetition Secured Parties will receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 11 and 13 herein, and (b) payment of documented fees and out-of-pocket expenses (including legal and other professionals' reasonable and documented fees and expenses whether arising before or after the Petition Date) as more fully set forth in paragraph **Error! Reference source not found.**-17 herein, and (ii) the Prepetition Vendor Program Loan Secured Parties and the Prepetition Term Loan Secured Parties shall receive current payment of interest. Because the Prepetition Revolving Loan Obligations have been converted into DIP Obligations and paid in full, there is no further need to provide adequate protection to the Prepetition Revolving Loan Secured Parties in the form of current payment of interest.

M. **Sections 506(c) and 552(b).** In light of: (i) the DIP Agents' and the DIP Lenders' agreement that their liens and superpriority claims shall be subject and subordinate to the Carve Out; (ii) the Prepetition Secured Parties' agreement that their liens shall be subject and subordinate to the Carve Out and subordinate to the DIP Liens; and (iii) the payment of expenses as set forth in the Budget, in accordance with and subject to the terms and conditions of this Final Order, (a) the Prepetition Secured Parties are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) the DIP Agents, DIP Lenders and Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

N. **Good Faith of the DIP Agents, DIP Lenders and Prepetition Secured Parties**.

(i) *Willingness to Provide Financing and Consent to Use of Cash Collateral.* The DIP Lenders provided the DIP Facility, and the Prepetition Secured Parties

consented to the use of Cash Collateral, subject to: (a) entry of the Interim Order and this Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Facility and the use of Cash Collateral are essential to the Debtors' estates, that the DIP Agents and DIP Lenders extended credit to the Debtors pursuant to the DIP Documents in good faith, that the DIP Agents, DIP Lenders and Prepetition Secured Parties have acted in good faith, and that the DIP Agents', DIP Lenders' and Prepetition Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final Order and the DIP Documents will have the protections provided by sections 363(m) and 364(e) of the Bankruptcy Code.

(ii)     *Business Judgment and Good Faith Pursuant to Section 364(e).*  The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, were fair, reasonable and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agents, the DIP Lenders, and the Prepetition Revolving Loan Secured Parties (and with respect to the use of Cash Collateral, the Prepetition Term Loan Secured Parties and Prepetition Vendor Program Loan Secured Parties), with the assistance and counsel of their respective advisors, and the DIP Agents, DIP Lenders, and Prepetition Secured Parties have acted in good faith.  The use of Cash Collateral and credit extended under the DIP Facility are deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agents, the DIP Lenders, and

24

the Prepetition Revolving Loan Secured Parties (and with respect to the use of Cash Collateral, the Prepetition Term Loan Secured Parties and Prepetition Vendor Program Loan Secured Parties) within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code.

O.    **Interim Hearing**.  Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Agents and the Prepetition Revolving Loan Agents; (iv) counsel to the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent; and (v) all other parties entitled to notice under the Local Rules.  No other notice was required in connection with the relief set forth in the Interim Order.

P.    **Final Hearing**.  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Agents and the Prepetition Revolving Loan Agents; (iv) counsel to the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent; (v) counsel to the Committee; (vi) all parties that have filed notices of appearance in these Cases; and (vii) all other parties entitled to notice under the Local Rules.  No other notice is required in connection with the relief set forth in this Final Order.

Based upon the foregoing findings and conclusions, the DIP Motion, the First Day Declaration, and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1. <u>DIP Financing Approved on Final Basis; DIP Facility Terminated</u>. The DIP Motion is granted as set forth herein on a final basis, the DIP Financing is authorized and approved on a final basis as set forth herein, and the use of Cash Collateral on a final basis is authorized, in each case subject to the terms and conditions set forth in the DIP Documents (with respect to the DIP Facility) and this Final Order. All objections to this Final Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled. Because the DIP Obligations have been paid in full and the Debtors do not anticipate any further need for the DIP Facility, the DIP Agents and the DIP Lenders shall not have any further obligation to extend credit under the DIP Facility upon the entry of this Final Order.

**DIP Facility Authorization**

2. <u>Authorization of the DIP Facility</u>. As set forth in the Interim Order, the Debtors were expressly and immediately authorized and empowered to, among other things, (a) execute and deliver the DIP Documents, to request the DIP Financing and to incur and to perform the DIP Obligations, and to deliver all instruments, certificates, agreements, and documents required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein), and (b) pay the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts became earned, due, and payable and without need to obtain further Court approval, including success or closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, amendment fees, commitment fees, backstop fees, servicing fees, audit fees, appraisal fees, administrative agent's fees, the reasonable and documented fees and disbursements of the DIP Agents' attorneys, advisors, accountants, and consultants, whether or not such fees arose

before or after the Petition Date, and whether or not the transactions contemplated thereby were consummated, to implement all applicable reserves and to take any other actions necessary or appropriate, and all such authorizations are hereby approved on a final basis.

3.    Reserved.

4.    DIP Obligations. The DIP Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including any trustee appointed in any of the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). The DIP Obligations include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtors to the DIP Agents or any of the DIP Lenders, in each case, under, or secured by, the DIP Documents or this Final Order, including all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Documents. Without limiting the foregoing, the DIP Obligations shall also include cash management exposure to the extent described in, or secured by, the Prepetition Revolving Loan Documents and the DIP Documents, including all Obligations (as defined in the DIP Agreement). No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligations or DIP Liens (as defined herein), and including in connection with any adequate protection provided to the Prepetition Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent

27

Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

      5.    <u>DIP Liens</u>.  Subject and subordinate to the Carve Out as set forth in this Interim Order, in order to secure the DIP Obligations, effective immediately upon entry of the Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agents, for the benefit of themselves and the DIP Lenders, were granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "<u>DIP Liens</u>") all personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of the Debtors (the "<u>DIP Collateral</u>"), including without limitation: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all proceeds of leased real

—

property; (c) actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral and all proceeds of any such action; (d) the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code (other than actions brought pursuant to section 549 of the Bankruptcy Code) or applicable state law equivalents; (e) the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code and the proceeds thereof; (f) all Prepetition Collateral; and (g) all DIP Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date.  Notwithstanding the foregoing, DIP Collateral shall not include the Debtors' real property leases (but shall include all proceeds of such leases).  The Prepetition Revolving Loan Liens shall be deemed continuing liens for the benefit of the Prepetition Revolving Loan Secured Parties, the DIP Agents, and the DIP Lenders to secure the DIP Obligations, and any liens, claims, or interests subordinate to the Prepetition Revolving Loan Liens as of the Petition Date shall likewise be deemed subordinate to the DIP Liens.  The DIP Liens are hereby approved on a final basis.

6.    <u>DIP Lien Priority</u>.  The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens are subject and subordinate to the Carve Out as set forth in the Final Order and otherwise are junior only to Prepetition Revolving Loan Permitted Prior Liens.  Other than as set forth herein (including the Carve Out) or in the DIP Documents, the DIP Liens are not subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Cases or Successor Cases.  The DIP Liens shall

not be subject to section 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Lien. Notwithstanding any provisions of this Final Order, or any final orders pertaining to the sale of the Debtors' assets, or any agreements validated by any such orders, any senior liens currently held by the Local Tax Authorities[5] shall neither be primed by, nor subordinated to, any liens granted thereby.

7.      DIP Superpriority Claims. The DIP Agents, on behalf of themselves and the DIP Lenders, are hereby granted on a final basis, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases and any Successor Cases (the "DIP Superpriority Claim") for all DIP Obligations: (a) except as set forth herein, including with respect to the Carve Out, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. The DIP Superpriority Claim shall be senior in all respects to each of the Adequate Protection Superpriority Claims (as defined herein).

8.      No Further Obligation to Extend Credit. Because the DIP Obligations have been paid in full and the Debtors do not anticipate any further need for the DIP Facility, the DIP

---

[5]      As used herein, "Local Tax Authorities" shall mean those parties set forth on Schedule 3 attached hereto.

Agents and the DIP Lenders shall not have any further obligation to extend credit under the DIP Facility upon the entry of this Final Order including, without limitation, with respect to any obligation to fund the Carve Out as provided for in paragraph 39 herein.

9.    <u>DIP Roll-Up of Loans</u>.  All Prepetition Revolving Loan Obligations have been converted into the DIP Roll-Up Loans on a final basis.  Such DIP Roll-Up Loans are included in the DIP Obligations and, as of the entry of this Final Order, have been paid in full.

## Authorization to Use Cash Collateral

10.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order and in accordance with the Budget (subject to such variances set forth in the Covenant Schedule (as defined below), the Debtors are authorized to use Cash Collateral until the Termination Date; *provided, however*, that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral solely to meet payroll obligations (other than severance) and pay expenses critical to keep the Debtors' businesses operating in accordance with the Budget, and as otherwise agreed by the DIP Agents and the Prepetition Secured Parties, each in their sole discretion.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order (including the Carve Out) and in accordance with the Budget (subject to such variances set forth in the Covenant Schedule).

11.    <u>Adequate Protection Liens</u>.

(a)    *Prepetition Revolving Loan Adequate Protection Liens.*  Subject to and subordinate to the Carve Out as set forth in this Final Order, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition

Revolving Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Revolving Loan Agents, for the benefit of themselves and the Prepetition Revolving Loan Secured Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on all DIP Collateral (the "Prepetition Revolving Loan Adequate Protection Liens").

(b)     *Prepetition Term Loan Adequate Protection Liens*.  Subject to and subordinate to the Carve Out as set forth in this Final Order and to the Prepetition Revolving Loan Adequate Protection Liens, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Secured Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on all DIP Collateral (the "Prepetition Term Loan Adequate Protection Liens").

(c)     *Prepetition Vendor Program Loan Adequate Protection Liens*. Subject to and subordinate to the Carve Out as set forth in this Final Order and to the Prepetition Revolving Loan Adequate Protection Liens, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Vendor Program Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Vendor Program Loan Agent, for the benefit of itself and the Prepetition Vendor Program Loan Secured Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on all DIP Collateral (the "Prepetition Vendor Program Loan Adequate Protection Liens," and together with

32

the Prepetition Revolving Loan Adequate Protection Liens and the Prepetition Term Loan Adequate Protection Liens, the "Adequate Protection Liens")

      12.    Priority of Adequate Protection Liens.

      (a)    The Prepetition Revolving Loan Adequate Protection Liens shall be subject and subordinate to the Carve Out as set forth in this Final Order and shall otherwise be junior only to (i) Permitted Prior Liens; (ii) the DIP Liens and (iii) the Prepetition Revolving Loan Liens, and the Prepetition Revolving Loan Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

      (b)    The Prepetition Term Loan Adequate Protection Liens shall be subject and subordinate to the Carve Out as set forth in this Final Order and shall otherwise be junior only to (i) Permitted Prior Liens; (ii) the DIP Liens; (iii) the Prepetition Revolving Loan Liens; (iv) the Prepetition Revolving Loan Adequate Protection Liens; (v) the Prepetition Vendor Program Liens; and (vi) the Prepetition Vendor Program Loan Adequate Protection Liens, and the Prepetition Term Loan Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

      (c)    The Prepetition Vendor Program Loan Adequate Protection Liens shall be subject and subordinate to the Carve Out as set forth in this Final Order and shall otherwise be junior only to (i) Permitted Prior Liens; (ii) the DIP Liens; (iii) the Prepetition Revolving Loan Liens; and (iv) the Prepetition Revolving Loan Adequate Protection Liens, and the Prepetition Vendor Program Loan Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

      (d)    Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the

Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, or upon the dismissal of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

13.    <u>Adequate Protection Superpriority Claims</u>.

(a)    *Prepetition Revolving Loan Superpriority Claim.* Subject and subordinate to the Carve Out as set forth in this Interim Order and the DIP Superpriority Claim, as further adequate protection of the interests of the Prepetition Revolving Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Revolving Loan Agents, on behalf of themselves and the Prepetition Revolving Loan Secured Parties, are hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Cases and any Successor Cases (the "<u>Prepetition Revolving Loan Superpriority Claim</u>").

(b)    *Prepetition Term Loan Superpriority Claim.* Subject and subordinate to the Carve Out as set forth in this Final Order, the DIP Superpriority Claim, the Prepetition Revolving Loan Superpriority Claim and the Prepetition Vendor Program Loan Superiority Claim, as further adequate protection of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Secured Parties, is hereby granted as and to the extent provided by section 507(b) of

the Bankruptcy Code an allowed superpriority administrative expense claim in the Cases and any

Successor Cases (the "Prepetition Term Loan Superpriority Claim").

        (c)    *Prepetition Vendor Program Loan Superpriority Claim*.  Subject

and subordinate to the Carve Out as set forth in this Final Order, the DIP Superpriority Claim and

the Prepetition Revolving Loan Superpriority Claim, as further adequate protection of the interests

of the Prepetition Vendor Program Loan Secured Parties in the Prepetition Collateral against any

Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Vendor Program

Loan Agent, on behalf of itself and the Prepetition Vendor Program Loan Secured Parties, is

hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed

superpriority administrative expense claim in the Cases and any Successor Cases (the "Prepetition

Vendor Program Loan Superpriority Claim," and together with the Prepetition Revolving Loan

Superpriority Claim and the Prepetition Term Loan Superpriority Claim, the "Adequate Protection

Superpriority Claims").

        14.    Priority of the Adequate Protection Superpriority Claims.  Except as set

forth herein or in the DIP Agreement, the Adequate Protection Superpriority Claims shall have

priority over all administrative expense claims and unsecured claims against the Debtors or their

estates, now existing or hereafter arising, of any kind or nature whatsoever, including

administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328,

330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c),

546(d), 726, 1113, and 1114 of the Bankruptcy Code; *provided, however*, that (a) the Prepetition

Revolving Loan Superpriority Claim shall be junior to the Carve Out and the DIP Superpriority

Claim, and shall be senior to the Prepetition Term Loan Superiority Claim and the Prepetition

Vendor Program Loan Superpriority Claim, (b) the Prepetition Term Loan Superpriority Claim

shall be junior to the Carve Out, the DIP Superpriority Claim, the Prepetition Revolving Loan Superpriority Claim, and the Prepetition Vendor Program Loan Superpriority Claim, and (c) the Prepetition Vendor Program Loan Superpriority Claim shall be junior to the Carve Out, the DIP Superpriority Claim and the Prepetition Revolving Loan Superpriority Claim, and shall be senior to the Prepetition Term Loan Superpriority Claim.

15.     Adequate Protection Covenants.  As additional adequate protection to the Prepetition Secured Parties, the Debtors shall at all times be in compliance with the covenants, and not in default under any of the Events of Default, set forth in the Covenant Schedule.

16.     Adequate Protection Payments and Protections for Prepetition Revolving Loan Secured Parties.  As further adequate protection (the "Prepetition Revolving Loan Adequate Protection Payments"), the Debtors are authorized to provide adequate protection to the Prepetition Revolving Loan Secured Parties in the form of payment in cash (without the need for the filing of a formal fee application) of the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Revolving Loan Agents, including the reasonable and documented out-of-pocket expenses and disbursements incurred by (I) Choate, Hall & Stewart LLP, as counsel to the Prepetition Revolving Loan Agents and (II) Richards, Layton & Finger, P.A., as co-counsel to the Prepetition Revolving Loan Agents, arising prior, on, or subsequent to the Petition Date. Because the Prepetition Revolving Loan Obligations have been converted into DIP Obligations and paid in full, there is no further need to provide adequate protection to the Prepetition Revolving Loan Secured Parties in the form of current payment of interest.

17.    <u>Adequate Protection Payments and Protections for Prepetition Term Loan Secured Parties and the Prepetition Vendor Program Loan Secured Parties</u>.  Subject to the Carve Out as set forth in this Final Order, as further adequate protection (the "<u>Prepetition Subordinated Creditor Adequate Protection Payments</u>"), the Debtors are authorized to provide adequate protection to (i) the Prepetition Vendor Program Loan Secured Parties and the Prepetition Term Loan Secured Parties in the form of payment in cash of interest (including at the default rate) due under the Prepetition Vendor Program Loan Documents, subject to the rights preserved in paragraph 42 below, and (ii) the Prepetition Vendor Program Loan Secured Parties and the Prepetition Term Loan Secured Parties in the form of payment in cash (without the need for the filing of a formal fee application) of the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Vendor Program Loan Secured Parties and the Prepetition Term Loan Secured Parties, including the reasonable and documented out-of-pocket expenses and disbursements incurred by (I) Covington & Burling LLP, as counsel to the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent, (II) Duane Morris LLP, as co-counsel to the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent (III) Winston & Strawn LLP, as counsel to the lenders pursuant to the Prepetition Term Loan Credit Agreement and Prepetition Vendor Program Credit Agreement and (IV) Young Conaway Stargatt & Taylor, LLP, as co-counsel to the lenders pursuant to the Prepetition Term Loan Credit Agreement and Prepetition Vendor Program Credit Agreement, in each case arising prior, on or subsequent to the Petition Date.

18.     <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the Prepetition Secured Parties, subject to the Intercreditor Agreement and the Term Vendor Intercreditor Agreement, to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

### Provisions Common to DIP Financing and Use of Cash Collateral

19.     <u>Budget Maintenance</u>.  The use of Cash Collateral shall be limited in accordance with the Budget, subject to the variances set forth in the Covenant Schedule attached hereto as <u>Schedule 2</u> (the "<u>Covenant Schedule</u>").  Until the indefeasible payment in full, in cash of the DIP Obligations and the Prepetition Secured Obligations, the Budget, and any modification to, or amendment or update thereof (together with any Approved Budget Variance Report), shall be delivered to, approved by, and in form and substance satisfactory to, the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders (as defined in the Prepetition Term Documents and Prepetition Vendor Program Loan Documents) in their sole discretion.  The Budget shall be updated, modified, or supplemented by the Debtors from time to time in accordance with the Covenant Schedule (provided that any update, modification or supplement shall be approved in writing by, and shall be in form and substance satisfactory to, the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders in their sole discretion), and no

such updated, modified, or supplemented budget shall be effective until so approved and once approved shall be deemed the "Budget"; *provided, however*, that if an updated, modified, or supplemented budget is delivered to the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders for approval, but the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders do not respond within five (5) business days, such budget shall be deemed the "Budget;" *provided further, however,* if the DIP Obligations and the Prepetition Secured Obligations have been indefeasibly paid in full in cash, the DIP Agents and the Prepetition Revolving Loan Agents shall not need to approve a Budget update, modification or supplement. Each Budget delivered to the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders shall be accompanied by such supporting documentation as reasonably requested by the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders and shall be prepared in good faith based upon assumptions the Debtors believe to be reasonable. A copy of any Budget (or updated Budget) shall be delivered to counsel for the Committee and the U.S. Trustee after (or if) it has been approved by the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders.

20.    <u>Budget Compliance</u>. The Debtors shall at all times comply with the Budget, subject to the variances set forth in the Covenant Schedule. The Debtors shall provide all reports and other information as required in the Covenant Schedule (subject to the grace periods provided therein); <u>provided</u>, <u>however</u>, that until the indefeasible payment in full, in cash of the DIP Obligations and the Prepetition Secured Obligations, all such reports shall also be provided to the DIP Agents and the Prepetition Revolving Loan Agents. The Debtors' failure to comply with the Budget (subject to the variances set forth in the Covenant Schedule) or to provide the reports and other information required in the Covenant Schedule (in each case, in accordance with this Final

Order) shall constitute an Event of Default (as defined herein), to the extent set forth in, and following the expiration of any applicable grace period set forth in, the Covenant Schedule.

      21.    <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including to: (a) permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claims and the Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agents, the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agents, the DIP Lenders and the Prepetition Secured Parties under the DIP Documents and this Final Order; and (d) authorize the Debtors to pay, and the DIP Agents, the DIP Lenders and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Final Order.

      22.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>. This Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, intellectual property security agreement, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Adequate Protection Liens, or to entitle the DIP Agents, the DIP Lenders and Prepetition Secured

Parties to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agents, the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent is authorized to file, as each in its sole discretion deems necessary or advisable, such financing statements, security agreements, intellectual property security agreements, mortgages, leasehold mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, security agreements, mortgages, leasehold mortgages, intellectual property security agreements, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  The Debtors are authorized to execute and deliver promptly upon demand to the DIP Agents, the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, and the Prepetition Vendor Program Loan Agent all such financing statements, security agreements, mortgages, leasehold mortgages, intellectual property security agreements, notices, and other documents as the DIP Agents, the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent may reasonably request.  Each of the DIP Agents, the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent and the Prepetition Vendor Program Loan Agent, in its discretion, may file a copy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.  To the extent that the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, or the Prepetition Vendor Program Loan Agent is the secured party under any security agreement, intellectual property security agreements, mortgage, leasehold

41

mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, consignment agreement, financing statement, account control agreements, or any other Prepetition Documents or is listed as loss payee, lender's loss payee, or additional insured under any of the Debtors' insurance policies, the DIP Agents shall also be deemed to be secured parties under such documents or to be the loss payee, lender's loss payee, or additional insured, as applicable. The Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent, and the Prepetition Vendor Program Agent shall serve as agents for the DIP Agents for purposes of perfecting the DIP Agents' liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

23. <u>Application of Proceeds of Collateral; Creation of Reserves.</u>

(a) As a condition to the authorization to continue to use Cash Collateral, the Debtors have agreed that as of and commencing upon the entry of this Final Order (and subject to the payment in full of all DIP Obligations and all Prepetition Revolving Loan Obligations), the Debtors shall make payments to the Prepetition Vendor Program Loan Agent (for the benefit of the Prepetition Vendor Program Loan Vendors), subject to this Final Order and to the extent set forth in the Budget (provided that such payments shall be reduced or suspended to the extent necessary to ensure the Debtors maintain cash on hand of not less than $500,000) and unless otherwise ordered by the Bankruptcy Court. For the avoidance of doubt, upon entry of this Final Order, none of the DIP Agents, the DIP Lenders, the Prepetition Revolving Loan Agents, or any of the Prepetition Revolving Loan Secured Parties shall be responsible for funding any reserve set forth herein, including, without limitation, the Stub Rent Reserve and the Section 503(b)(9) Reserve (as each term is defined herein).

(i)        Notwithstanding clause (a) hereof or anything to contrary herein, upon entry of this Final Order, (x) the amount of $3,027,000 (the "Stub Rent Reserve") shall be held in reserve by the Debtors to satisfy obligations arising under the Debtors' real property leases for the period of July 11, 2019 through July 31, 2019 ("Stub Rent Claims") and (y) the amount of $2,119,000 (the "Section 503(b)(9) Reserve") shall be held in reserve by the Debtors to satisfy claims allowed under section 503(b)(9) of the Bankruptcy Code ("Section 503(b)(9) Claims"). The Debtors have filed a motion to establish a bar date for the filing of prepetition and postpetition claims, including Stub Rent Claims and Section 503(b)(9) Claims (the "Bar Date Motion"), and (x) subject to entry of the order approving the Bar Date Motion, shall be authorized to pay undisputed Stub Rent Claims and Section 503(b)(9) Claims from the Stub Rent Reserve and Section 503(b)(9) Reserve, as applicable, without further order of the Court and (y) shall work diligently to reconcile and pay any disputed Stub Rent Claims and Section 503(b)(9) Claims from the Stub Rent Reserve and Section 503(b)(9) Reserve, as applicable, when agreed to by the Debtors or as determined by final order of the Court.  Upon the final reconciliation and payment of allowed Stub Rent Claims and Section 503(b)(9) Claims, the Stub Rent Reserve and Section 503(b)(9) Claim Reserve shall terminate and any remaining funds shall be released to the Debtors, subject to the terms and conditions of the Budget and this Final Order.

24.        Protections of Rights of DIP Agents, DIP Lenders and Prepetition Secured Parties.  Unless the DIP Agents and the Prepetition Revolving Loan Agents shall have provided their prior written consent, or all DIP Obligations and all Prepetition Secured Obligations have been indefeasibly paid in full in cash:

(a)        Without the prior written consent of the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders, there shall not be entered in the Cases or any

Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims except as expressly set forth in this Final Order; (ii) the use of Cash Collateral for any purpose other than as permitted in this Final Order; (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness or consignment arrangement) to any creditor of any Debtor or any creditor's taking any setoff or recoupment against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification of any of the DIP Agents', the DIP Lenders' or the Prepetition Secured Parties' rights under this Final Order.

(b)    The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records, and accounts to the extent and as required by the Covenant Schedule (and subject to the applicable grace periods set forth therein); (ii) reasonably cooperate with, consult with, and provide to the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders all such information and documents that the Debtors are obligated (including upon reasonable request by the DIP Agents, the Prepetition Revolving Loan Agents or the Required Lenders) to provide under the provisions of this Final Order; (iii) upon reasonable advance notice and during normal business hours, permit the DIP Agents, the DIP Lenders and the Prepetition Secured Parties and their advisors to visit and inspect

any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the Covenant Schedule and/or the Prepetition Documents; (iv) permit the DIP Agents, the DIP Lenders and the Prepetition Secured Parties, and their advisors to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets in accordance with this Final Order; and (v) upon reasonable advance notice and during normal business hours, permit the DIP Agents, the DIP Lenders and the Prepetition Secured Parties to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the Prepetition Collateral or DIP Collateral in accordance with, and to the extent set forth in, this Final Order and the Covenant Schedule.

      25.     <u>Credit Bidding</u>.  In connection with any sale process authorized by the Court, the DIP Agents, the DIP Lenders and the Prepetition Secured Parties (subject to the Intercreditor Agreement and the Term Vendor Intercreditor Agreement) may credit bid some or all of their claims for their respective priority collateral (each a "<u>Credit Bid</u>") pursuant to section 363(k) and/or section 1129 of the Bankruptcy Code.  Each of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall be considered a "Qualified Bidder" with respect to its rights to acquire all or any of the assets by Credit Bid provided such Credit Bid includes other customary terms and conditions in the proposed purchase agreement.

26.     <u>Proceeds of Subsequent Financing</u>.    If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in the Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) at any time prior to the indefeasible repayment in full, in cash of all Prepetition Secured Obligations, including subsequent to the confirmation of any plan with respect to the Debtors and the Debtors' estates, and such facilities are secured by any Prepetition Collateral or DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Agents to be applied in accordance with this Final Order and the Prepetition Documents.

27.     <u>Cash Collection</u>.    All collections and proceeds of any DIP Collateral or Prepetition Collateral or services provided by any Debtor and all Cash Collateral (except as otherwise set forth in the Budget) that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Revolving Loan Documents (or in such other accounts as are designated by the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders from time to time) (collectively, the "<u>Cash Collection Accounts</u>"), which accounts shall be subject to the sole dominion and control of the Prepetition Vendor Program Loan Agent or Prepetition Term Loan Agent, as applicable, unless otherwise ordered by the Bankruptcy Court.  Unless otherwise agreed to in writing by the DIP Agents and the Prepetition Revolving Loan Agents, or otherwise provided for herein, the Debtors shall maintain no accounts except those identified in any cash management order entered by the Court (a "<u>Cash Management Order</u>").  The Debtors and the financial institutions where the

46

Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order), are authorized to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from Required Lenders.

28.    Maintenance of DIP Collateral.  The Debtors shall: (a) insure the Prepetition Collateral and DIP Collateral as required under the Covenant Schedule or the Prepetition Documents, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any Cash Management Order that has first been agreed to by the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders or as otherwise required by the Covenant Schedule or this Final Order.

29.    Disposition of DIP Collateral.  The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or Prepetition Collateral other than in the ordinary course of business without the prior written consent of the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders (and no such consent shall be implied, from any other action, inaction or acquiescence by any of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties, or from any order of this Court), except as otherwise provided for in the Covenant Schedule or this Final Order.

30.    Termination Date.  On the Termination Date: (a) at the option of the Required Lenders, all authority to use Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral to pay payroll obligations (other than severance) and other expenses critical to keep the businesses of the Debtors operating in accordance with the Budget; and (b) the DIP Agents, the DIP Lenders and the Prepetition Secured Parties otherwise may exercise rights and remedies under this Final Order (including paragraph 33).

31.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders in writing, shall constitute an event of default (collectively, the "<u>Events of Default</u>"): (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order; or (b) the occurrence of an "Event of Default" as defined in the Covenant Schedule.

32.    <u>Case Milestones</u>.  As a condition to the continued use of Cash Collateral, the Debtors shall comply with the bankruptcy related affirmative covenants (as set forth in the Covenant Schedule, the "<u>Case Milestones</u>").  For the avoidance of doubt, the failure of the Debtors to comply with any of the Case Milestones shall (a) constitute an Event of Default under this Final Order; and (b) subject to the expiration of the Remedies Notice Period (as defined herein), result in the automatic termination of the Debtors' authority to continue to use Cash Collateral under this Final Order; and (c) permit the DIP Agents, the DIP Lenders and the Prepetition Secured Parties, subject to paragraph 33, to exercise the rights and remedies provided for in this Final Order.

33.    <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order and the Remedies Notice Period, (a) the Required Lenders may in their sole discretion declare (any such declaration shall be referred to herein as a "<u>Termination Declaration</u>," and such date a Termination Declaration is delivered shall be referred to herein as the "<u>Termination Date</u>") that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice (as defined herein) to the Debtors and their counsel, the U.S. Trustee, and lead counsel to the Committee and (b) the DIP

Agents, the DIP Lenders and the Prepetition Secured Parties may exercise other rights and remedies set forth in this Final Order and the Covenant Schedule. The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee, counsel to the DIP Agents and the U.S. Trustee. The automatic stay in the Cases otherwise applicable to the DIP Agents, the DIP Lenders and the Prepetition Secured Parties is hereby modified so that seven (7) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period") the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall be entitled to exercise all rights and remedies, in accordance with this Final Order, to satisfy the DIP Obligations, the DIP Superpriority Claim, the DIP Liens, the Prepetition Secured Obligations, Adequate Prepetition Superpriority Claims, and Prepetition Adequate Protection Liens, subject to the Carve Out. During the Remedies Notice Period, the Debtors and/or the Committee shall be entitled to seek an emergency hearing within the Remedies Notice Period. Unless the Court orders otherwise, the automatic stay, as to the DIP Agents, the DIP Lenders and the Prepetition Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein, in the Covenant Schedule, in the Prepetition Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with the Intercreditor Agreement and the Term Vendor Intercreditor Agreement, as applicable, and this Final Order.

      34.    <u>Good Faith; No Modification or Stay of this Final Order</u>. The DIP Agents, the DIP Lenders and the Prepetition Secured Parties have acted at arms' length, in good faith, in connection with this Final Order and are entitled to rely upon the protections granted herein and

by sections 363(m) and 364(e) of the Bankruptcy Code. Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with sections 363(m) and 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter reargued, reconsidered, reversed, modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Agents, the DIP Lenders and the Prepetition Secured Parties are entitled to the protections provided in sections 363(m) and 364(e) of the Bankruptcy Code to the maximum extent set forth therein.

35.     <u>Expenses</u>.    The Debtors are authorized to pay all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of (i) the DIP Agent and the DIP Lenders in connection with the DIP Facility, as provided in the DIP Documents, and (ii) the Prepetition Secured Parties, including attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses as set forth in the Prepetition Documents, subject to the provisions set forth in paragraphs 16 and 17 herein. Subject to the review procedures set forth in this paragraph 35, payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, however any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its invoices (which shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney

client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for the Committee contemporaneously with the delivery of such invoices to the Debtors. Any objections raised by the Debtors, the U.S. Trustee, or the Committee with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of the receipt of such invoice; if after ten (10) days such objection remains unresolved, it will be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized to pay upon entry of this Final Order all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties incurred on or prior to such date without the need for any professional engaged by the DIP Agents, the DIP Lenders and the Prepetition Secured Parties to first deliver a copy of its invoice or other supporting documentation. No attorney or advisor to the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Any and all fees, costs, and expenses paid prior to the Petition Date by the Debtors to the DIP Agents, the DIP Lenders and the Prepetition Secured Parties in connection or with respect to these matters, are hereby approved in full and shall not be subject to avoidance, disgorgement or any similar form of recovery by the Debtors or any other person.

36.    Indemnification.

(a)    The Debtors shall indemnify and hold harmless the DIP Agents, the DIP Lenders and the Prepetition Secured Parties and each of their respective directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement

PHIL1 8160855v.1

payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained, or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Documents, the DIP Facility or the transactions contemplated thereby and by the Interim Order and this Final Order, whether such indemnified party is party thereto, or in connection with this Case, any plan, or any action or inaction by the Debtors, provided the indemnified party shall not settle any claim without the consent of the Debtors. The indemnity includes indemnification for each of the DIP Agents', the DIP Lenders' and the Prepetition Secured Parties' exercise of discretionary rights granted under this Final Order. In all such litigation, or the preparation therefor, each of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

(b)     Upon the entry of this Final Order, the Debtors shall deposit $500,000 into an indemnity account (the "Revolving Loan Indemnity Account") subject to the first priority liens of the DIP Agents, for the benefit of the DIP Lenders, and the Prepetition Revolving Loan Agents, for the benefit of the Prepetition Revolving Loan Lenders. If no Challenge with respect to the Prepetition Revolving Loan Facility is timely commenced by the Challenge Deadline, the Revolving Loan Indemnity Account shall be released and the funds applied in accordance with paragraph 23 of this Final Order so long as (x) the DIP Obligations and the Prepetition Revolving Loan Obligations have been indefeasibly paid in full in cash, and all letters of credit related thereto having been cancelled, backed, or cash collateralized in accordance with the terms thereof, and all bank product obligations having been cash collateralized in a manner and amount acceptable to the DIP Agents and the Prepetition Revolving Loan Agents (as

applicable), and (y) the DIP Agents, the Prepetition Revolving Loan Agents, the DIP Lenders and each of the Prepetition Revolving Loan Lenders have received releases from the Debtors and their estates, with respect to any claims arising out of or related to the DIP Documents or the Prepetition Revolving Loan Documents, acceptable to the DIP Agents, the Prepetition Revolving Loan Agents, the DIP Lenders and the Prepetition Revolving Loan Lenders, each in their sole discretion.

37.     <u>Proofs of Claim</u>.  The DIP Agents, the DIP Lenders and the Prepetition Secured Parties will not be required to file proofs of claim in the Cases or Successor Cases for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Cases or Successor Cases to the contrary, each of the Prepetition Revolving Loan Agents on behalf of themselves and the Prepetition Revolving Loan Secured Parties, the Prepetition Term Loan Agent on behalf of itself and the Prepetition Term Loan Secured Parties, and the Prepetition Vendor Program Loan Agent on behalf of itself and the Prepetition Vendor Program Loan Secured Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in the Cases or Successor Cases for any claim allowed herein.  Any proof of claim filed by the Prepetition Revolving Loan Agents, the Prepetition Term Loan Agent or the Prepetition Vendor Program Loan Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Revolving Loan Secured Parties, the Prepetition Term Loan Secured Parties or Prepetition Vendor Program Loan Secured Parties, respectively.  Any order entered by the Court in relation to the establishment of a bar date in the Cases or Successor Cases shall not apply to any claim of the DIP Agents, the DIP Lenders and Prepetition Secured Parties arising under, or in connection with, the DIP Documents or the Prepetition Documents.

PHIL1 8160855v.1

38.    <u>Access</u>.    The Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the Prepetition Agents reasonable access upon reasonable notice and during normal operating hours to the Debtors' premises and their books and records in accordance with the Prepetition Documents, as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.    In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the Prepetition Agents all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtors.

39.    <u>Carve Out</u>.

(a)    Subject to the terms and conditions contained in this paragraph 39, the DIP Liens, the DIP Superpriority Claim, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims are all subordinate to the following (collectively, the "<u>Carve Out</u>"):

(i)    The payment of fees pursuant to 28 USC section 1930 (a)(6) together with the statutory rate of interest, which fees shall not be limited to amounts that may be set forth in the Budget, and fees required to be paid to the Clerk of this Court pursuant to 28 USC section 156(c);

(ii)    All amounts actually incurred by professionals retained by the Debtors or the Committee (the "<u>Case Professionals</u>"), through the date of service by the Required Lenders of a Carve Out Trigger Notice (as defined below), which incurred amounts shall be funded into a segregated escrow account (the "<u>Professional Fee Escrow Account</u>") on Friday of each week in accordance with the amounts reflected in the Budget for such week; and

        (iii)    All accrued and unpaid fees, disbursements and expenses incurred by the Case Professionals from and after the date of the service of a Carve Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $350,000 (the "Carve Out Advance"). The Carve Out Advance was previously funded into the Professional Fee Escrow Account on the Closing Date (as defined in the DIP Agreement). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by the Required Lenders to the lead counsel for the Debtors, the U.S. Trustee, the DIP Agents and the Committee, which notice may be delivered at any time by the Required Lenders following the occurrence and continuance of any Event of Default and, in any case, shall specify that it is a "Carve Out Trigger Notice".

        (b)    Upon the delivery of a Carve Out Trigger Notice, an amount equal to the Carve Out (as of the date of the Carve Out Trigger Notice) shall be funded (only to the extent not previously funded) solely with Cash Collateral. Following delivery of a Carve Out Trigger Notice, upon the funding of the Carve Out as of the date of service of the Carve Out Trigger Notice as described above, none of the Prepetition Secured Parties shall have any further liability whatsoever for the Carve Out (including any amounts described in subsections (a)(i)-(iii) above) or any subordination in respect thereof. None of the DIP Agents, DIP Lenders or Prepetition Secured Parties shall be responsible for funding any "success", "restructuring", "transaction" or similar fee payable to the Debtors' investment banker or financial advisor, and in no event shall any such amounts be paid out of the Carve Out. For the avoidance of doubt (but subject to subsection (a)(iii) above), the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claim, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens or claims securing the DIP Obligations and/or the Prepetition Secured Obligations.

(c)    Nothing herein, including the inclusion of line items or other amounts in the Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expense of the Debtors, of the Committee, or of any other person or shall affect the right of any of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  The DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agents, the DIP Lenders or Prepetition Secured Parties in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.  Moreover, to the extent any fees, disbursements, costs or expenses, incurred by any Case Professional shall be disallowed by final order of this Court, such disallowed amounts shall be released from the Professional Fee Escrow Account and applied in accordance with this Final Order.

(d)    For the avoidance of doubt, upon entry of the Final Order, none of the DIP Agents, the DIP Lenders, the Prepetition Revolving Loan Agents or the Prepetition Revolving Loan Secured Parties shall be responsible for the funding the Carve Out or any other amounts into the Professional Fee Escrow Account.

40.    <u>Limitations on Use of Cash Collateral and Carve Out</u>.  The DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Agents', the DIP Lenders' or Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral

56

except as permitted herein; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of the Collateral without the consent of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties; (d) incurring indebtedness; (e) seeking to amend or modify any of the rights granted to, the DIP Agents, the DIP Lenders or the Prepetition Secured Parties under this Final Order, the DIP Documents or the Prepetition Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, the DIP Obligations, the Prepetition Liens, the Prepetition Secured Obligations, the DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties, respectively; (g) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, Prepetition Liens, the Prepetition Secured Obligations or any other rights or interests of any of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided, however*, that the Carve Out and such collateral proceeds may be used for allowed fees and expenses, in an amount not to exceed $25,000 in the aggregate (the "Investigation Budget

57

Amount"), incurred solely by the Committee, in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Term Loan Liens and the Prepetition Vendor Program Liens within sixty (60) calendar days from formation of the Committee.

41.    <u>Payment of Compensation</u>.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professional, and the right of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses is fully preserved. So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, not to exceed with any professional the applicable amount reflected in the most recent Budget, *provided*, *however*, Paul Hastings LLP and Klehr Harrison Harvey Branzburg LLP shall not be limited to the amounts reflected in the most recent Budget.

42.    <u>Effect of Stipulations on Third Parties</u>.

(a)    *Generally*.  The admissions, stipulations, agreements, releases, and waivers set forth in this Final Order (collectively, the "<u>Prepetition Lien and Claim Matters</u>") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including the Committee, unless a party in interest with requisite standing (other than (x) the Debtors, as to which any Challenge (as defined herein) is irrevocably waived and relinquished and (y) the Prepetition Term Loan Secured Parties and the Prepetition Vendor Program Loan Secured Parties, as to which any Challenge with respect to the

58

Prepetition Revolving Loan Facility is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings, and timely and properly commenced an adversary proceeding or contested matter (in each case subject to the limitations set forth in this paragraph 42) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than 60 days from the date of formation of the Committee (the "Challenge Deadline"), as such applicable date may be extended by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline; *provided* that (x) as to the Committee, the Challenge Deadline has expired, and no Challenge has been or may be commenced, with respect to each of the Prepetition Revolving Loan Facility, Prepetition Term Loan Facility and the Prepetition Vendor Program Facility and (y) as to the Prepetition Term Loan Secured Parties and the Prepetition Vendor Program Loan Secured Parties, the Challenge Period has expired, and no Challenge has been or may be commenced, with respect to the Prepetition Revolving Loan Facility; *provided further*, that if a chapter 11 trustee is appointed or the Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Deadline, the chapter 11 or chapter 7 trustee, as applicable, shall have until the later of (1) the Challenge Deadline or (2) the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of the Cases to cases under chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.

(b)      *Binding Effect.* To the extent no Challenge is timely commenced by the Challenge Deadline with respect to any Prepetition Lien and Claim Matters, or to the extent

such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, any such Prepetition Lien and Claim Matters shall, pursuant to this Final Order, become binding, conclusive, and final on any person, entity, or party in interest in the Case, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estate.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is specifically and expressly the subject of a timely filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above, and only as to plaintiffs or movants that have complied with the terms hereof; *provided* that if and to the extent any Challenge to any Prepetition Lien and Claim Matters is withdrawn, denied or overruled by a non-appealable final order, such Prepetition Lien and Claim Matters shall also be binding on the Debtors' estate and all parties in interest.  To the extent any such Challenge proceeding is timely and properly commenced, the applicable Prepetition Secured Parties reserve their right to seek payment or reimbursement of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred in defending themselves in any such proceeding as adequate protection.  Upon a successful Challenge brought pursuant to this paragraph 42, the Court may fashion any appropriate remedy.

43.    No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

44.    Section 506(c) Claims.  No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against any of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, or any of their respective claims, or any DIP Collateral or the Prepetition Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

45.    No Marshaling/Applications of Proceeds.  The DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Final Order notwithstanding any other agreement or provision to the contrary.

46.    Section 552(b).  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

47.    Access to DIP Collateral.  Upon expiration of the Remedies Notice Period, unless otherwise ordered by the Bankruptcy Court, the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall be permitted to (a) access and recover any and all Prepetition Collateral and DIP Collateral, and (b) enter onto any leased premises of any Debtor and exercise

PHIL1 8160855v.1

all of the Debtors' rights and privileges as lessee under such lease in connection with an orderly liquidation of the Prepetition Collateral and DIP Collateral, *provided, however,* in the case of clause (b), the DIP Agents, the DIP Lenders and the Prepetition Secured Parties can only enter upon a leased premises after an Event of Default in accordance with (i) a separate written agreement by and between the DIP Agents, the DIP Lenders and the Prepetition Secured Parties, as applicable, and any applicable landlord, (ii) pre-existing rights of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the applicable DIP Agent, DIP Lender or Prepetition Secured Party on such notice to the landlord as shall be required by this Court; provided, further, however, solely with respect to rent due to a landlord of any such leased premises, the DIP Agents, the DIP Lenders and/or Prepetition Secured Parties, as applicable, shall be obligated only to reimburse the Debtors for the payment of rent of the Debtors that first accrues after delivery of the Termination Declaration in accordance with paragraph 33 herein that is payable during the period of such occupancy by the DIP Agents, the DIP Lenders and/or the Prepetition Secured Parties, as applicable, calculated on a daily per diem basis; provided, further, that nothing herein shall relieve the Debtors of their obligations pursuant to section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to delivery of the Termination Declaration through and including any assumption and/or rejection of any lease.  Nothing herein shall require the DIP Agents, the DIP Lenders or Prepetition Secured Parties to assume any lease as a condition to the rights afforded in this paragraph.

48.    <u>Limits on Lender Liability</u>.  Nothing in this Final Order, any of the DIP Documents, or any other documents related thereto shall in any way be construed or interpreted to

impose or allow the imposition upon the DIP Agents, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses, whether before or after the Petition Date, or in connection with the administration of these Cases. The DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall not be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Final Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors.

49.    <u>Insurance Proceeds and Policies</u>.  The DIP Agents (on behalf of the DIP Lenders), the Prepetition Revolving Loan Agents (on behalf of the Prepetition Revolving Loan Lenders), the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Lenders) and the Prepetition Vendor Program Loan Agent (on behalf of the Prepetition Vendor Program Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral or the Prepetition Collateral.

50.    <u>Liability</u>.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of the Debtors' estates.

51.    <u>No Superior Rights of Reclamation</u>.  Based on the continuation of the Prepetition Liens, the relation back of the DIP Liens and the integrated nature of the DIP Facility

and the Prepetition Documents, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the Prepetition Liens.

52.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the Prepetition Documents, the Intercreditor Agreement and the Term Vendor Intercreditor Agreement: (a) the DIP Agents', the DIP Lenders' and the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agents, the DIP Lenders and/or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Cases or Successor Cases, conversion of the Cases to cases under Chapter 7, or the appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agents, DIP Lenders or Prepetition Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Committee's, or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.

53.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Documents, the Prepetition Documents, or applicable

law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties.

54.     <u>Binding Effect of Final Order</u>.  Immediately upon execution by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, all other creditors of the Debtors, the Committee (or any other court appointed committee), and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

55.     <u>No Modification of Final Order</u>.  The Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agents and the Prepetition Secured Parties, (i) any modification, stay, vacatur, or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders, any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral; or (c) without the prior written consent of the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, the Prepetition Liens or Adequate Protection Liens.  The Debtors irrevocably waive any

right to seek any amendment, modification or extension of this Final Order without the prior written consent of the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders, and no such consent shall be implied by any other action, inaction or acquiescence. Upon the indefeasible payment in full of the DIP Obligations, the Debtors shall cooperate with the Prepetition Secured Parties regarding any further amendment to this Final Order reasonably requested by the Required Lenders; *provided*, that no further amendment to this Final Order shall adversely affect the DIP Agent or the DIP Lenders, unless the DIP Agent and the DIP Lenders, each in their sole discretion, have provided prior written consent to such amendment.

56. <u>Continuing Effect of Intercreditor Agreement and Term Vendor Intercreditor Agreement</u>. The Debtors and the Prepetition Secured Parties (as applicable) each shall be bound by, and in all respects the Prepetition Secured Facilities shall be governed by, and be subject to all the terms, provisions and restrictions of the Intercreditor Agreement, the Term Vendor Intercreditor Agreement and any other subordination agreement governing the rights and obligations of the Prepetition Secured Parties in effect as of the Petition Date.

57. <u>Final Order Controls</u>. In the event of any inconsistency between the terms and conditions of this Final Order and any other documents, the provisions of this Final Order shall govern and control.

58. <u>Discharge</u>. The DIP Obligations, the Prepetition Secured Obligations and the obligations of the Debtors with respect to the adequate protection provided herein to the Prepetition Secured Parties shall not be discharged by the entry of an order confirming any plan of reorganization in the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the

effective date of such confirmed plan of reorganization, or each of the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders have otherwise agreed in writing. The Debtors shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment in full in cash of the DIP Obligations (if any) and the Prepetition Secured Obligations (other than contingent indemnification obligations for which no claim has been asserted), and the payment of the Debtors' obligations to the Prepetition Secured Parties with respect to the adequate protection provided for herein, in full, in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "Prohibited Plan or Sale") without the prior written consent of the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders. For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder.

59.    Survival.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Cases; (b) converting the Cases to cases under Chapter 7 of the Bankruptcy Code; (c) dismissing the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing the Cases or Successor Cases. The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to the DIP Agents, the DIP Lenders and the Prepetition Secured Parties granted pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such orders described in (a)-(d), above, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order.

60.    *Nunc Pro Tunc* Effect of this Final Order. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

61.    Treatment of Proceeds from Sale of Texas and Arizona Assets. As adequate protection for the claims of the Local Tax Authorities, the Debtors will fund a segregated account (the "Local Tax Account") in an amount not to exceed $275,000 from the proceeds of the non-ordinary course sale of any of the Debtors' assets located in the states of Texas and Arizona that occurs after the Petition Date. The liens asserted by the Local Tax Authorities (and all other liens junior to those of the Local Tax Authorities) shall attach to the Local Tax Account to the same extent and with the same priority as the liens the Local Tax Authorities assert against such assets of the Debtors. The Local Tax Account shall be maintained solely for the purpose of providing adequate protection for the Local Tax Authorities prior to the distribution of any proceeds to any other creditor and shall constitute neither the allowance of the claims of the Local Tax Authorities, nor a floor or cap on the amounts the Local Tax Authorities may be entitled to receive. All parties' rights to object to the priority, validity, amount and extent of the claims and liens asserted by the Local Tax Authorities are fully preserved. Funds in the Local Tax Account may be distributed upon agreement between the Local Tax Authorities and the Debtors, with the consent of the DIP Agents, the Prepetition Revolving Loan Agents and the Required Lenders, or by subsequent order of the Court, duly noticed to the Local Tax Authorities and the DIP Agents. Notwithstanding any other provisions included in the Interim Order or Final Order, or any agreements approved hereby, any statutory liens (collectively, the "Local Tax Liens"), including business personal property liens, of the Local Taxing Authorities shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such Local Tax Liens are valid, senior, perfected, and

PHIL1 8160855v.1

unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Local Taxing Authorities are fully preserved.

62.    <u>Consulting Agreement</u>.    Subject to paragraph 42, the liens and security interests granted pursuant to the Consulting Agreement dated as of July 3, 2019 by and between the Debtors and a contractual joint venture comprised of Hilco Merchant Resources LLC and SB360 Capital Partners (the "<u>Consulting Agreement</u>") are valid, enforceable, perfected, non-avoidable, and have the priority set forth in the Consulting Agreement. Nothing in this Final Order shall prime the liens and security interests granted on the "Additional Agent Goods" (as defined in the Consulting Agreement) pursuant to the Consulting Agreement. Notwithstanding anything to the contrary herein, the DIP Agents, the DIP Lenders and the Prepetition Secured Parties (subject to the order authorizing the assumption of the Consulting Agreement) shall have no obligation to fund any payments to be made under the Consulting Agreement.

63.    <u>Retention of Jurisdiction</u>.    The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Final Order.

Dated: __8/14__, 2019

_____
UNITED STATES BANKRUPTCY JUDGE

PHIL1 8160855v.1